## *Exparte* GRACE.

1. CONSTITUTIONAL LAW: IMPRISONMENT FOR DEBT. Chapter 126 of the Revision of 1860 does not provide for the imprisonment of a debtor in a manner, or under circumstances not fully warranted by § 19 of art. 1, of the constitution of 1857.

2. FRAUD: HABEAS CORPUS. The judgment of a court of competent jurisdiction finding the conduct of a creditor fraudulent, will not be reviewed by another court upon *habeas corpus*.

3. STATUTE CONSTRUED: SUPPLEMENTAL PROCEEDINGS. The provisions of chapter 126 of the Revision of 1860, conferring upon an examining officer the power to order any property of a judgment debtor in the hands of himself or others, to be delivered up and applied in satisfaction of the judgment under which the proceedings were had, and the further power to punish as for a contempt any disobedience of any order made by the acting officer in the premises, are repugnant to §§ 9 and 10 of art. 1 of the Constitution, and are therefore void.

4. CONTEMPTS. The power to punish contempts, without the intervention of a jury, is inherent in every court, and extends to the enforcement of every order which it may, in the legitimate exercise of its authority, make; but does not extend to orders made without authority or jurisdiction. The exercise of this power is not in conflict with §§ 9 and 10 of art. 1, of the Constitution.

5. SAME: JURY TRIAL. The right of jury trial is secured in actions at law, and the legislature can not by an evasion of the constitution render that which is in its essence a suit at law, a proceeding to punish for a contempt.

6. CHARACTER OF SUPPLEMENTAL PROCEEDINGS. The purpose of the proceedings under chapter 126 of the Revision of 1860, is to obtain an order for the payment of the debt, and not alone to settle the right of the creditor to the application of the proceeds of a certain fund.

7. CASES HELD INAPPLICABLE. The cases of the *Bank of Rochester* v. *The Bank of Sandusky City*, 6 Ohio State R. 254; *Spear* v. *Wardwell*, 1 Conn. 144; *Stewart* v. *Bradburn*, 2 Ib. 108, arose under Constitutions

Exparte Grace.

containing no provisions similar to the sections above cited in the Constitution of this State, and are therefore not decisive of the questions involved.

*Appeal from Scott District Court.*

THURSDAY, OCTOBER 17.

ONE Noxon recovered judgment against Grace, the petitioner, and the execution issued thereon being returned unsatisfied, he obtained an order from the county judge of Scott county, for the appearance before him of said debtor, for examination, under chapter 126 of the Rev. 1860. Upon this examination it was found by the county judge that the debtor had money in his possession, which he refused to deliver up, to be applied towards the satisfaction of the judgment, though ordered so to do. The debtor persisting in his disobedience to this order, it was directed that he be imprisoned until he comply with the same. Grace then applied to the ;Hon. Jno. F. Dillon, for his discharge from custody; being restrained of his liberty by the jailor of the county. The writ of *habeas corpus* issued, and upon the hearing thereof, Grace was discharged, from which Ackley, (the jailor,) and the District Prosecutor, on behalf of the State, appeal.

*Campbell & Bills* for the appellants.

I. Proceedings for contempt can be reviewed only on *certiorari*. Code of 1851, § 1606; *Dunham* v. *The State of Iowa*, 6 Iowa 252; *Platt* v. *Hansen, sheriff*, Ib. 79, and the cases there ciited.

II. The county court is an independent tribunal, having well defined powers; and the judgment of one tribunal will not be reviewed by another, on *habeas corpus*. *The People* v. *Cassell*, 5 Hill 167; *Platt* v. *Hansen, Sheriff, supra*; *Yates* v. *Lansing*, 9 John 414.

III. The provisions of chapter 126 Revision of 1860, are not inconsistent with §§ 9, 10, and 19, art. 1, Const. 1857.

VOL. XII.        15

1. It does not provide for taking property without due process of law. The right to take the debtor's property was determined by the judgment for the amount of the debt, and this is simply a more effective execution. *Steward* v. *Biddlecum*, 2 Com. 107; *Spear* v. *Wordell*, 1 Ib. 144; *Berthelow* v. *Betts*, 4 Hill 577.

2. The provisions of § 10 of the constitution, do not, and can not from the very nature of things, apply to contempts. They relate to suits regularly commenced in courts to try questions of fact. *Livingston* v. *The Mayor of New York*, 8 Wend. 102. In the matter of Smith 10 Ib. 456; *Yates* v. *Lansing, supra*, Const. of New York, art. 41; *Patrick* v. *Warner*, 4 Paige Ch. 397.

3. Courts must of necessity have the power to punish for contempts without the intervention of a jury. *Platt* v. *Hanson, supra*; *Saylor* v. *Mockbie*, 9 Iowa 209; *The State of Iowa* v. *Dunham, supra*.

3. It is evident from the language of the constitution, and the bill of rights, that this section (10,) was intended to apply only to the case of a fugitive slave. 1 Debates Const. Convention 64, 201, 651.

4. There is no question of fact to try. 1. It is not a criminal charge. 2. It is not a question of life. 3. It is not a question of liberty.

5. No jury was demanded. It can not be with propriety claimed that a jury trial was refused, when it was not demanded,

6. It is a proceeding to reach property, and is not therefore inconsistent with the provisions of § 19 art. 1 of the Const. 3 Rev. Stat. of New York (5th ed.) 126. *Steward* v. *Biddlecum*, 2 Cow. 103; *Patrick* v. *Warner*, 4 Paige 397; *Spear* v. *Wordell*, 1 Conn. 144; *Bartholomew* v. *Betts*, 4 Hill 577; *Hicker* v. *Dresser*, 13 How. Pr. R. 331; S. C. 14 Ib. 465; *Dresser* v. *Van Pelt*, 15 Ib. 494; *Ross* v. *Lansing*, 14 Ib. 161; *Platt* v. *Hansen, supra*, *Saylor* v. *Mockbie*, 9 Iowa 209.

*Grant & Smith* for the appellee. [No argument on file.]

WRIGHT, J.—Several questions, unimportant in their bearing and consequences to the main and essential one, have been discussed by counsel, which we do not deem it necessary to determine. Thus, it is urged by appellants that petitioner should not have been allowed to amend his petition; that there was error in the admission of certain testimony on the hearing of the *habeas corpus*, and that under this writ the District Judge had no power to review the action of the county judge. To all these, and other comparatively minor matters, the petitioner responds by inquiring by what right Ackley, (the jailor,) or the district prosecutor, have a standing in this court as appellants. As an answer to any of these questions would leave undetermined those of vital practical importance discussed by counsel, and which they seem to concede should have an early decision in this State, we pass at once to their consideration.

Chapter 126 of the Rev. so far as it bears upon the questions involved, is in substance as follows: " If an execution is issued upon a judgment and returned unsatisfied in whole or in part, the owner of the judgment may obtain an order for the appearance and examination of the debtor. The like order may be obtained at any time after the issuing of an execution, upon proof, by affidavit or otherwise, that the debtor has property which he unjustly refuses to apply towards the satisfaction of the judgment. This order may be obtained, among other officers, from the judge of the county court. On his appearance the debtor may be interrogated in relation to any fact calculated to show the amount of his property, the disposition he has made of it, or any other matter pertaining to the purpose for which the examination may be made. Witnesses may be produced and examined in the same manner as upon the trial of an issue. If property, subject to execution is thus ascertained, an execution may be issued and it be levied upon accordingly.

The judge may order any property of the debtor, not exempt in the hands of himself or others to be delivered up, or in any other mode applied to the payment of the judgment. Should the debtor fail to appear after being personally served; or fail to make full answer to all proper interrogatories, he will be guilty of a contempt, and may be arrested and imprisoned until he complies with the requirements of the law in this respect. And if any person disobey any order of the court or judge, duly served, he may be punished as for a contempt.

It was for a disobedience of an order to pay over money found to be in his pocket, that petitioner was ordered to be punished as for a contempt. He claims that this law is repugnant to §§ 9, 10 and 19, of Article 1 of the Constitution, and void. These sections are: 9. " The right of trial by jury shall remain inviolate; but the General Assembly may authorize a trial by a jury of a less number than twelve men in inferior courts; but no person shall be deprived of life, liberty or property without due process of law." 10. " In all criminal prosecutions and in cases involving the life or liberty of an individual, the accused shall have a right to a speedy and public trial by an impartial jury" &c. 19. " No person shall be imprisoned for debt in any civil action on mesue or final process, unless in case of fraud &c."

It will be observed that chapter 126 is a substitute for chapter 111 of the old Code, and that in many of their features they are alike. Two important differences, however, may be noticed. The one is giving the power to the examining officer, or court, to order `any property of the debtor in the hands of himself or others to be delivered up and applied to the satisfaction of the judgment. The other, that which gives the power to punish, as for a contempt, any person who shall disobey any order of the court or judge in the premises.

So again, the new Constitution differs from the old, by

adding to § 9, the words : " but no person shall be deprived of life, liberty or property, without due process of law." And to § 10: "And in cases involving the life or liberty of an individual." Section 19 is the same in both instruments.

If this case turned alone upon the ground that the act was repugnant to § 19, we should not be inclined to give much weight to the argument. That is to say, we are not of the opinion that this chapter provides for the imprisonment of the debtor in a manner or under circumstances not fully warranted by the constitution. The failure of the debtor to surrender his property, liable to execution, to the payment of the judgment, might well be such fraud, as that within the meaning of the constitution, he would forfeit his right to claim exemption from imprisonment. Not only so, but if the fraud was once found by a competent tribunal, the correctness of that finding could not be reviewed in another court, or by any judge, upon *habeas corpus*.

When the act is measured by the other provisions of the constitution, however, there is more doubt and difficulty. This doubt arises, in view of those provisions which give the right to a trial by a jury in all cases " involving the life or liberty of an individual," and which declare that no one shall be deprived of his liberty without due process of law.

It is claimed by counsel that the change in § 10, of the Bill of Rights, was only intended to meet the case of a fugitive slave. Whatever may have been the primary motive of some, or all of the members of the constitutional convention, in incorporating this provision, we can certainly see no reason in the nature of things, nor in the language employed, to justify the conclusion that white men were not also entitled to the benefit of it. We can not believe that it was intended to give the right of trial by jury to the occasional fugitive slave found in our State, and to withhold it in cases of equal magnitude and vital importance, from the half million of free white inhabitants of the State.

Again, it is suggested, that this right applies to suits at law. This is true, but the legislature can not by an evasion of the constitution, make that a proceding to punish for a contempt, which in its essence is a suit at law. That is to say, if the party is secured by the constitution a jury trial in all cases involving his liberty; and if he is guarantied due process of law before he can be deprived of this liberty; and it be true at the same time that these provisions have reference to suits at law, it would by no means follow that these safeguards could be frittered away and broken down by styling every proceeding to punish for a disobedience of the order of a court or judge, a proceeding to punish for contempt or something else, instead of a suit, an action, a trial. If by " due process of law," in the language of BROWN, J., in *Taylor* v. *Porter*, 4 Hill 140, is meant no less "than a prosecution or suit instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt, or determining the title to property," then the legislature can not under the guise of punishing a party for a contempt, provide for condemning without hearing, for rendering judgment without inquiry, nor without such hearing and inquiry as he should have by due process of law. Another exposition of the phrase " due process of law," is the right of trial according to the process and proceedings of the common law, or law in its regular course of administration through courts of justice." [9th ed. Kent. 1 V. 621; 3 Story on Const. 264, 661.] And would it be claimed under this definition, that by an investigation, provided for by statute, unusual and unheard of, at common law, or in the known and regular course of the administration of the law through courts of justice, that the citizen if imprisoned thereunder was deprived of his liberty by due process of law ?

We have no thought that it was the intention of the constitution to take from courts the power to punish for contempt, without giving to the party charged a jury trial. Or

at least, notwithstanding the broad and sweeping language used, we will not believe, without an array of authorities and weight of argument not yet brought to our attention, that it was designed to thus virtually take from every court a power so essential to its efficiency and very existence, and no less necessary for the safety and benefit of the public ; the protection of every citizen in his life, liberty and property. It is a preservative power, inherent in every court, and is to be exercised by the tribunal itself, and not by another for it. And this power extends to the enforcement of every order, which the court may in the legitimate exercise of its authority, make. But not, of course, to the enforcement of an order which it had no authority, by reason of want of jurisdiction, or otherwise, to make. For the second order being predicated upon the first, both of course, must fall together. If, however, the order disobeyed was erroneous merely, and not void, then the legality of the consequent imprisonment could not be inquired into by a proceeding of this nature. This view retains in every court the power to enforce its mandates, whenever legitimately made, without involving the necessity, as urged by appellants, of submitting the qustion of their correctness to a jury. Thus, if a deed is ordered to be executed, the obligation of the party to do this, has been ascertained in the regular course of the administration of justice. So of a wilful disturbance of, and open interference with, the proceedings of the court in its presence, the same being of such a character as that the judge takes immediate and personal cognizance of, in the same way and manner that he would of the violation of a criminal statute in his presence. So, assuming that upon a judgment recovered for the fraud of the party, he might be taken under a *ca sa*, there would be no infringement of his constitutional rights if imprisonment should follow, for by " due course of law " the fraud has been adjudicated. But suppose the alleged fraud arises after judgment, and because of some claimed failure

of the debtor to act honestly and according to his legal duty, is it competent for a county judge (not as a court), to hear witnesses, examine testimony upon the issue or issues made (§3379), adjudge whether the party is guilty or innocent as charged, and order him imprisoned if he fails to comply with his finding. We are constrained to hold not. If this can be done, then it seems to us that it would be just as competent, to provide for the examination of a party and his subsequent imprisonment, if he failed to pay any judgment rendered against him. If this can be permitted, then we do not see, how far the legislature might not go, in providing for the trial of issues without a jury, their determination, and for the imprisonment of the party who failed to comply with the finding. And it can make no difference that the party examined did not demand a jury, for the county judge, before whom, as judge, the examination was had, had no power to impannel a jury, and a party is not presumed to waive that which there was no power to grant, if asked.

Nor, are we inclined to give weight to the argument that the basis of the proceeding, to-wit: the judgment is a verity, can not be gainsayed, and that this proceeding is to settle the right of the judgment creditor to the application of the proceeds of a certain fund, or of the fund itself, and not to be to obtain an order that the debtor pay the debt. However, it may be in individual cases, as a rule it will be found true, that the debtor is charged with fraudulently secreting his property. If not this, some other question or questions of fact will be raised just as vital to the security of the debtor's property, or it may be, involving just as clearly his liberty, as though made before trial and judgment. Take one feature in this case, as an illustration. The petitioner claimed, when he appeared before the county judge, that the money, whatever he had, was exempt, being his earnings for his personal services, within ninety days preceeding the levy or notice to him. Now, the fact that this claim, in this case, was entirely untrue, does not change the

principle, for he had a right to present such an issue, and to have it tried, and that by the tribunal guarantied him by the constitution.   And until issues of this character are determined, how is it to be determined that the creditor is entitled to the application?   And if the county judge has jurisdiction to try such issues, then what power may he not exercise ?   Having no jurisdiction, he had no power to make the order, and though the disobedience of it was styled a contempt, it was not such in legal contemplation.   For there can be no legal disobedience, when there was no power to make the order contemned.

In this connection we are referred by counsel, to *Bank of Rochester* v. *Bank of Sandusky*, 6 Ohio St. R. 254.   The length of this opinion forbids that we should do more than say that the two cases are not alike in principle, and that even in that case, the judges intimate a doubt, whether the order could be enforced by imprisonment.   Constitutional difficulties, such as meet us in this State, are not discussed and do not seem to have been in the way.   And the same may be said of *Spear* v. *Woodwell,* 1 Com. 144, which though a lengthy case, and well reasoned by able judges, is in no respect in conflict with the views above expressed.   The questions made are by no means similar.   And the same remark applies to *Steward* v. *Biddlecum,* 2 Ib. 103.   *Saylor* v. *Mockbie,* 9 Iowa 209, was a proceeding in chancery by one partner against the other, to settle their accounts, and throws no light whatever upon the case at bar.   And indeed we feel warranted in saying that if any authority is found sustaining the proceeding, it will be under a constitution containing no such provisions as those relied upon by the petitioner in this case.

Affirmed.