*In the Matter of the Petition of* MELVIN BURROWS, *for a Writ of Habeas Corpus.*

1. CONSTITUTIONAL LAW; *Proceedings in Aid of Execution.* The provisions of the code "in aid of execution" conferring upon the district judge the power to require a judgment debtor to appear before him to answer concerning his property, which he unjustly refuses to apply toward the satisfaction of a judgment rendered against him, and to order any money in his actual possession and under his control, not exempt by law, to be delivered up and applied toward the satisfaction of the judgment under which the proceedings are had, and to enforce said orders by proceedings for contempt in case of refusal or disobedience, are not violative of §§ 5, 10, or 16 of the bill of rights of the constitution of the state, nor of the fifth amendment of the federal constitution.

2. ——— *Right to Jury Trial.* A judgment debtor is not entitled to a. jury trial before a district judge upon his examination under the provisions of the code "in aid of execution," as to whether he unjustly refuses to apply money in his possession and under his control, not exempt. by law, toward the satisfaction of the judgment under which the proceedings are had.

3. ——— *Contempt; Imprisonment.* Where a judgment debtor has been examined before a district judge, in accordance with the provisions of the code "in aid of execution," and his examination has resulted in the disclosure that he has upon his person and under his actual control money, not exempt by law, which he unjustly refuses to apply toward the satisfaction of the judgment under which the proceedings are had,. and the judge thereupon orders him to deliver over sufficient of said money to satisfy the judgment and costs, and the judgment debtor willfully disobeys the order, the district judge may enforce the same by proceedings for contempt, and under such proceedings may commit him to. the jail of the county until the judgment and costs, and the costs of the proceedings for contempt, are satisfied.

*Original Proceedings in Habeas Corpus.*

PETITION for a writ of *habeas corpus,* filed in this court April 24, 1885, by *Melvin Burrows,* against *C. H. Thompson,* as sheriff of Marion county. Thereupon the writ prayed for was issued and made returnable before the supreme court on May 6, 1885. On that day the said sheriff brought before the court the body of the petitioner aforesaid, and certified in his return to the writ as follows, to wit:

"The body of the within-named Melvin Burrows was held by me at the time of the issuance of the said writ, for contempt of court, under the order and warrant of commitment of Hon. L. Houk, judge of the ninth judicial district of said state of Kansas, a copy of which said order and warrant of commitment is hereto attached, marked 'Exhibit A,' and made a part hereof; and by virtue of a judgment upon a mandate of your said court affirming said order, a copy of which said judgment is hereto attached and made a part hereof, and marked 'Exhibit B.'

"And I do further certify, as I am informed and verily believe, that the said examination as referred to in the petition of Melvin Burrows herein filed, was held by and with the voluntary assent and consent of said Melvin Burrows; and, as I am further informed and believe, I do deny that said Melvin Burrows was denied a trial by jury, and that he was compelled to be a witness against himself, and that the said judge kept no minutes of his said proceedings, and that said Melvin Burrows was denied the right of being confronted by witnesses, and all the witnesses, in said proceedings—all of which said matters of fact are set forth in the said petition of Melvin Burrows herein filed, and alleged to be true.

"And I do further certify, as I am informed and verily believe, that the said order adjudging said Melvin Burrows guilty of a contempt of court has never been reversed, modified, or satisfied.

"And I do further certify, that, pursuant to the commands of your said writ, I did, upon a recognizance given, release the said Melvin Burrows from custody on April 25, 1885; nevertheless, the body of the said Melvin Burrows I have ready here before this court."

Other facts are stated in *The State, ex rel., v. Burrows*, ante, pp. 10, *et seq.*, and in the opinion herein, filed June 4, 1885.

*J. S. Dean*, for petitioner.

*J. H. Morse*, for The State.

The opinion of the court was delivered by

HORTON, C. J.: On March 25, 1884, F. H. Kollock and B. Fanning recovered before a justice of the peace of Marion county in this state, a judgment against Melvin Burrows, ag-

gregating, with costs, $325.30. On June 7, 1884, an abstract of the judgment was filed and docketed in the office of the clerk of the district court of said county. On the same day an execution was issued upon the judgment to the sheriff of Marion county against the property of the judgment debtor. This execution was returned unsatisfied, and the judgment still remains unsatisfied. Subsequently to the return of the execution, proceedings were taken before the district judge of Marion county against the debtor, under the sections of the code "in aid of execution," to compel him to answer concerning his property, which the judgment creditors alleged he unjustly refused to apply toward the satisfaction of their judgment. The judge found that Burrows had, at his examination, upon his person and under his actual control, money to the amount of $1,000, not exempt by law, and he then ordered him to apply sufficient of said moneys so in his possession toward the satisfaction of the judgment against him. Burrows wholly failed and neglected to comply with the order. Thereupon, he was arrested, brought before the judge, and upon a hearing it was adjudged that he was guilty of contempt in disobeying the order directing him to pay said judgment. It was further ordered that he be committed to the jail of Marion county until he paid the said judgment with interest and costs, and also the costs of the proceedings for contempt, amounting to $26.60.

It is claimed, on behalf of Burrows, that the order of the district judge committing him to the jail of Marion county until he should pay the amount of the judgment of March 25, 1884, and the provisions of the code authorizing his examination and commitment, are violative of § 5 of the bill of rights of the constitution of the state, which provides that "the right of trial by jury shall be inviolate;" also § 10 of the bill of rights, that "no person shall be a witness against himself;" also, of § 16 of the bill of rights, that "no person shall be imprisoned for debt, except in cases of fraud;" and also, are obnoxious to the fifth amendment to the federal constitution, that "no per-

son shall be deprived of life, liberty or property without due process of law."

The principal contention is, that Burrows had the right, upon his examination, to have the question of his ability to pay the judgment decided by a jury. *In re Grace*, 12 Iowa, 208, is cited to support this proposition. Therein, it is decided that under a somewhat similar provision of the Iowa statute, the court has not the power to punish for contempt, without giving the party charged a jury trial. The court, in that case, pronounces the statute under which the proceedings were had offensive to a peculiar provision of the constitution of Iowa in reference to trial by jury, said to have been introduced into the constitution to secure fugitive slaves the right to such trial. Mr. Pomeroy, in his notes in Sedgwick on Statutory and Constitutional Law, 490, says, in reference to this case:

"But this decision is probably exceptional; for a similar statute exists in many states — in most of those which have adopted the New York code of procedure — and seems to have raised no objection."

The proceeding in aid of execution, though created by statute, is a proceeding in the action in which the judgment was recovered, after the judgment debtor has had a hearing and trial, and is a substitute for the creditors' bill formerly used in chancery. The proceeding is a simple regulation of well-established and well-defined jurisdiction which courts of equity were accustomed to employ. After the decree in a court of equity for the delivery of the property or effects, the debtor, upon disobeying the decree, was adjudged for his contumacy guilty of contempt of the authority of the court. He therefore could be imprisoned so long as he remained in contempt. Obedience, however, to the decree — that is, the delivery of the property — would terminate the imprisonment at any time. The purpose of the statute is to require the delivery of the property of the judgment debtor for the payment of his debts; and if it is made, the debtor cannot be imprisoned. It is only when the debtor has property which he unjustly refuses to

apply toward the satisfaction of a judgment, after being afforded the opportunity so to do, that he can be imprisoned. "The imprisonment is not for debt, but for the neglect and refusal to perform a moral and legal duty, the performance resting in his ability." (Brickell, C. J., in *Ex parte John Hardy*, 68 Ala. 339.)

It was said in *Kimball v. Connor*, 3 Kas. 414, that the provision of the bill of rights concerning jury trial does not require every trial to be by jury:

"Nor does it contemplate that every issue which by the laws in force at the adoption of the constitution of the state was triable by jury, should remain irrevocably triable by that tribunal. Trial by jury is guaranteed only in those cases where that right existed at common law. Such is the meaning of the constitutional provision referred to, and in statutory proceedings in chancery, etc., the legislature is fully competent to dispense with the jury."

Further, in the case of *In re Grace*, supra, cited by counsel, it was said:

"The failure of the debtor to surrender his property liable to execution to the payment of the judgment might well be such fraud as that, within the meaning of the constitution, he would forfeit his right to claim exemption from imprisonment. Not only so, but if the fraud was once found by a competent tribunal, the correctness of that finding could not be reviewed in another court or by any judge upon *habeas corpus*." (*The State v. Becht*, 23 Minn. 411; *Kearney's Case*, 13 Abb. N. Y. Pr. 459; *Ex parte Smith*, 53 Cal. 204; *Ex parte Cohn*, 55 Cal. 193; *People v. Cowles*, 3 Abb. N. Y. App. Dec. 507; *The State, ex rel., v. Burrows*, ante, p. 10.)

Counsel for petitioner refers to the case of *Ex parte John Hardy*, 68 Ala. 303, as decisive that the sections of the code under consideration do not authorize imprisonment for debt. That decision was rendered by a divided court, and to us the dissenting opinion of Chief Justice Brickell is the more satisfactory. It was no violation of the constitution to require the judgment debtor to answer, in a civil action, concerning his property, especially as he claimed no exemption on the

ground that his answers might criminate himself. Section 485 of the code reads:

"No person shall, on examination pursuant to this article, be excused from answering any question on the ground that his examination will tend to convict him of a fraud; but his answer shall not be used as evidence against him in a prosecution for such fraud."

We therefore conclude that the provisions of the code, "in aid of execution," conferring upon the district judge the power to require a judgment debtor to appear before him to answer concerning his property, which he unjustly refuses to apply toward the satisfaction of a judgment recovered against him, and to order any money, or other property in his actual possession and under his control, not exempt by law, to be delivered up and applied toward the satisfaction of the judgment under which the proceedings are had, and to enforce said orders by proceedings for contempt, in case of refusal or disobedience, are not violative of §§ 5, 10 or 16 of the bill of rights of the constitution of the state, nor of the fifth amendment of the federal constitution. (Code, §§ 483, 490; *The State, ex rel., v. Burrows,* supra.)

Counsel calls attention to *Bank v. Bank,* 6 Ohio St. 254, as establishing the doctrine that the district judge has no authority to require a judgment debtor to deliver over money in his hands and under his control to satisfy a judgment rendered against him. That case merely decides upon this point that no peremptory order to pay the debt or to deliver the property can be made against a third person or a stranger to the original judgment. In such a case, the judge is to order the property or debt due the judgment debtor to be applied to the satisfaction of the judgment, thus fixing the right of the judgment debtor, so that when possession of the property is obtained or the debt collected by a sheriff or receiver, under § 491 of the code, the proceeds may be applied to the discharge of the judgment.

It is asserted that as Burrows was required to pay the orig-

inal judgment, the order of commitment is void, because greatly in excess of the judge's power to punish for a contempt. Section 2, ch. 28, Comp. Laws of 1881, is cited as limiting the powers of judges at chambers to punish for contempt, to a fine not exceeding $100 and imprisonment. We think the sections of the statute "in aid of execution" confer the power upon the district judge to imprison a judgment debtor who unjustly refuses to apply money in his possession and under his control, not exempt by law, toward the satisfaction of a judgment rendered against him, after being afforded the opportunity so to do, so long as he willfully disobeys the order of the judge. (*Kearney's Case*, supra; *People v. Cowles*, supra.) In this case, Burrows is imprisoned simply and wholly because he will not deliver up money in his possession and under his control in payment of the judgment. He can terminate the imprisonment at any time by the mere exercise of his own will; that is, by satisfying the original judgment and costs, and the costs of the supplementary proceedings — all of which, under the findings of the district judge, he has the ability to do.

The claim that the examination of the judgment debtor outside of the county of his residence renders the proceedings void, is not well taken; because it appears from the record that the examination outside of Marion county was had with the consent of all the parties, and that subsequently the hearing of the case was renewed in Marion county, where all of the evidence taken at the examination was read and considered, and the order for the payment of the judgment was made in the county where the debtor was served and resided. (*The State, ex rel., v. Burrows*, supra.)

It is finally alleged that the order of commitment is illegal, because the judge did not reduce all his orders to writing, together with the minutes of the proceedings, and file the same with the district clerk of Marion county. It appears from the evidence that the terms of the statute were complied with, excepting that the clerk failed to enter upon his execution

docket the same. This omission or irregularity of the clerk in no way affects the validity of the commitment.

The petitioner must be remanded.

All the Justices concurring.