| 67 | 619 |
|----|-----|
| 79 | 177 |
| 67 | 619 |
| 82 | 685 |
| 67 | 619 |
| 84 | 633 |

## EIKENBERRY & CO. v. EDWARDS.

1. **Contempt:** PROCEEDINGS AUXILIARY TO EXECUTION: REFUSAL TO TURN OVER NOTES. In a proceeding auxiliary to execution, the defendant was ordered by the judge to turn over certain notes to be sold in satisfaction of the execution, and, though the notes were not in defendant's hands, but in the hands of a resident of a distant state, they were under his control, and *held* that he was guilty of contempt for disobedience to the order.

2. **Constitutional Law:** PROCEEDINGS AUXILIARY TO EXECUTION: IMPRISONMENT FOR CONTEMPT. Chapter 3 of title 18 of the Code, providing proceedings auxiliary to execution, for the purpose of discovering the property of the execution defendant, is not repugnant to § § 9 and 10 of article 1 of the constitution, in that it provides (§ 3145) that " if any person, party or witness disobey an order of the court or judge or referee, duly served, such party or witness may be punished as for contempt.'' Such imprisonment does not deprive the prisoner of his liberty without " due process of law," as those terms were understood at the time of the adoption of the constitution. · *Ex parte Grace*, 12 Iowa, 208, distinguished.

BECK, CH. J., and ADAMS, J., *dissenting.*

MONDAY, DECEMBER 14.

*Certiorari.* This is an original proceeding in this court to review an order made by the Hon. E. L. BURTON, judge of the district court of the Second judicial district.

*T. B. Perry*, for plaintiffs.

*H. L. Dashiell* and *G. D. Porter*, for defendant.

SEEVERS, J.—The plaintiffs recovered a judgment against the defendant, and caused an execution to be issued thereon, which was returned unsatisfied. Thereupon the plaintiffs filed a petition, in which it was stated that the defendant had in his possession property which he unjustly refused to apply in satisfaction of the execution; and an order for the appearance and examination of the debtor, as provided in Code, § 3135, was asked. Such an order was made, and the defendant appeared in response thereto. An examination was had, and the fact disclosed that the defendant had sold certain real estate, and received therefor promissory notes amounting to $18,760, which, the day after the notice was served requiring him to appear for examination, he had sent to his son-in-law in Colorado. The district court of Monroe county, in which the proceeding was pending, made an order requiring the defendant to turn over the notes to the court, and a receiver was appointed to receive and take charge of said notes, and it was further ordered that they should be regarded as assets subject to be sold on execution. It was further ordered that, upon the notes being so turned over, they should be subject to any further order that might be made in vacation in relation thereto. The defendant failed to deliver the notes as required by the order, and afterwards he was, in vacation, adjudged by the judge of said court to be guilty of a contempt, and ordered to be committed to the jail of Wapello county until he obeyed the order of the court.

I.  Counsel for the defendant insist that the defendant was not guilty of a contempt.  The proceedings in question were

1. CONTEMPT: proceedings auxiliary to execution: refusal to turn over notes. commenced under chapter 3, title 18, of the Code, entitled "Proceedings Auxiliary to Execution," and section 3145 of that chapter provides that "if any person, party or witness disobey an order of the court or judge or referee, duly served, such person, party or witness may be punished as for contempt." The defendant certainly refused to obey the order of a court or judge.  He therefore is clearly guilty of a contempt, unless the facts adduced on the examination will not warrant the order made, or the statute is unconstitutional. We have examined the record with care, and are of the opinion that, although the notes were in the actual possession of another, yet they undoubtedly were so held for the use and benefit of the defendant, and were under his control.  The order, therefore, was fully warranted.

II.  Is the statute unconstitutional?  Counsel for the defendant cite and rely on *Ex parte Grace*, 12 Iowa, 208.  It was

2. CONSTITUTIONAL law: proceedings auxiliary to execution: imprisonment for contempt. held in that case that a similar statute was unconstitutional, because it conflicted with sections 9 and 10 of article 1 of the constitution, which provide that the right of trial by jury shall remain inviolate, and that no person shall be deprived of life, liberty or property without due process of law.  The only case cited by counsel in support of their position is *Ex parte Grace*. It will therefore be assumed that no adjudged case can be found which accords therewith, and yet it is true that similar statutes have been in force in several of the states for some years.  Possibly the first state to enact such a statute was New York, and we are not advised that it has been declared unconstitutional, although questions under it have frequently been determined in the inferior courts of that state.  *In re Pester*, 2 Code Rep., 98; *Sandford v. Carr*, 2 Abb. Pr., 462; *Driggs v. Williams*, 15 Id., 477; *Kearney's Case*, 13 Id., 459; *Tompkins Co. Bank v. Trapp*, 21 How. Pr., 17;

*Gould v. Torrance*, 19 Id., 560. Statutes substantially the same as ours have been held to be constitutional in *State v. Becht*, 23 Minn., 411, and *In re Burrows*, 33 Kan., 675; S. C., 7 Pac. Rep., 149.

Under the chancery practice as it existed at the time the constitution was adopted, a person could be deprived of his liberty or property, and such deprivation has always been regarded as having been accomplished by " due process of law," which has been defined to be " law in its regular course of administration through courts of justice." *Happy v. Mosher*, 48 N. Y., 313; *Mason v. Messenger*, 17 Iowa, 261; *Den., ex dem., Murray v. Hoboken Land etc. Co.*, 18 How., 272. In so far as the pleadings are concerned, the distinction between actions at law and proceedings in chancery have been abolished by the Code, and there is now but one form of action, which pertains to both law and chancery. Under the chancery practice as it existed when the constitution was adopted, and now under the Code, a creditor's bill could be filed, the object of which was the discovery and subjection of property to the payment of a debt or judgment. Proceedings auxiliary to execution, as provided in the statute, were unknown to the common law; and the object to be accomplished thereby, and the manner of doing it, are or may be quite similar to a creditor's bill, and may be well regarded as affording an additional remedy for the accomplishment of the same object. At least it may be said to be a statutory proceeding not in accord with the common law, but more nearly like a proceeding in chancery, and should, under the Code, be classed as a special proceeding, and tried as an ordinary action at law or proceeding in chancery, and the mode of trial will be determined by assigning the proceeding to whichever class it appropriately belongs. *Sisters of Visitation v. Glass*, 45 Iowa, 154. The statute contemplates a trial before a court, judge or referee; and such always has been the mode of trial in chancery cases. Witnesses may be examined, and the rights of the parties as fully

protected as in any other proceeding in chancery. The defendant, therefore, was not deprived of his liberty or property without due process of law, and therefore the statute is not unconstitutional.

There is a material difference between the present statute and that in force when *Ex parte Grace* was determined. Under the present statute the order for the appearance of the supposed debtor can only be made by the district or circuit court, or a judge thereof, and the examination must be had before one of such courts or judges, or before a referee. Such courts have full and complete jurisdiction of actions at law and proceedings in chancery. They may impanel juries before whom issues may be tried. The judges of said courts have all the powers possessed by judges of courts of general jurisdiction, and the statute under consideration cannot be said to be unconstitutional because the order for the appearance and examination may be made by a judge; nor can it be so said because the examination is had before the judge, unless the defendant asks to have it before the court; for, if such is his constitutional right, it is clear that such right may be waived. The statute in force when *Ex parte Grace* was determined provided that the order for and examination of the debtor could be made by the county court, or judge thereof, and the examination had before such court or judge. Such court was not a court of general jurisdiction. It had no power to try actions at law or proceedings in chancery. Its jurisdiction was limited and defined by statute. The court in *Ex parte Grace* laid some stress on the character and powers of the court before whom the proceeding was had, and the decision of this court in that case may be sustained. because the court and judge thereof did not have the power to impanel a jury, and was not vested with the power and jurisdiction to try issues in actions at law or proceedings in chancery.

III. The Code commissioners recommended that the general assembly should amend the statute under considera-

THE SAME
tion in the Revision, by striking out the words "county court, or judge thereof," and providing that the order for the examination of the debtor should be issued by the district or circuit court, or a judge thereof, and that all the subsequent proceedings should be had before such court or judge. The recommendation was adopted, and the statute re-enacted, and it exists now in other respects in substantially the same form as it did when *Ex parte Grace* was determined. In addition to the foregoing, the Code commissioners recommended the enactment of certain provisions which it may be supposed would, in their opinion, clearly make the statute both constitutional and effective. These last provisions the general assembly failed to adopt, and it is therefore insisted, in substance, that it was the legislative intent that no change should be made to obviate the construction adopted by this court. But we think this conclusion should not be entertained. The statute, as it had existed and had been construed, failed to accomplish the results intended by its enactment. It had become practically obsolete. In view of the change made, and the re-enactment of the statute, it may well be supposed that the legislative thought was that the construction which had obtained had been obviated. For the reasons stated, the orders and proceedings before the district court and judge thereof must be

AFFIRMED.

BECK, CH. J., *dissenting.*—The statute under which the proceedings in this case were had are the sections of the Code which are here set out:

" SEC. 3135. When execution against the property of a judgment debtor, or one of several debtors in the same judgment, has been issued from the district, circuit or supreme court to the sheriff of the county where such debtor resides; or, if he do not reside in the state, to the sheriff of the county where the judgment was rendered; or a transcript of a justice's judgment has been filed, and execution thereon is

returned unsatisfied in whole or in part,—the owner of the judgment is entitled to an order for the appearance and examination of such debtor.

"SEC. 3137. Such order may be made by the district or circuit court of the county in which the judgment was rendered, or to which execution has been issued, or, in vacation, by a judge thereof; and the debtor may be required to appear and answer before either of such courts or judges, or before a referee appointed for that purpose by the court or judge who issued the order, to report either the evidence or the facts."

"SEC. 3140. If any property, rights or credits subject to execution are thus ascertained, an execution may be issued, and they may be levied upon accordingly. The court or judge may order any property of the judgment debtor not exempt by law, in the hands either of himself or any other person or corporation, or due to the judgment debtor, to be delivered up, or in any other mode applied towards the satisfaction of the judgment.

"SEC. 3141. The court or judge may also, by order, appoint the sheriff of the proper county, or other suitable person, a receiver of the property of the judgment debtor, and may also, by order, forbid a transfer or other disposition of the property of the judgment debtor, not exempt by law, or may forbid any interference therewith.

"SEC. 3145. Should the judgment debtor fail to appear, after being personally served with notice to that effect, or should he fail to make full answers to all proper interrogatories thus propounded to him, he will be guilty of contempt, and may be arrested and imprisoned until he complies with the requirements of the law in this respect. And if any person, party or witness disobey an order of the court or judge or referee, duly served, such person, party or witness may be punished as for contempt."

The statute authorizes the district and circuit courts, or the judges thereof, to require a defendant in execution to submit to an examination under oath (Code, § 3138) as to the prop-

erty he owns and its disposition. Witnesses may be required
to appear and testify in the proceedings. Code, § 3139. The
court or judge may, upon such proceedings, order the defend-
ant to surrender any property, found to belong to him, to the
court, which shall be held by the receiver. If the order be
disobeyed, the defendant may be committed as for a contempt,
and be subjected to imprisonment until he obeys the order.
The effect of the provisions is to authorize a summary pro-
ceeding wherein the defendant may be deprived of his liberty.

The constitution of the state (article 1, § 9) declares that
" no person shall be deprived of life, liberty or property with-
out due process of law." The term " due process of law"
means the ordinary judicial proceedings recognized by law,
and provided for determining the rights of property and for
subjecting the citizen to deprivation of his liberty for viola-
tion of the law. *Boyd v. Ellis*, 11 Iowa, 97; *Ex parte
Grace*, 12 Iowa, 208; *Stewart v. Board Sup'rs*, 30 Id., 9.
No man may be deprived of his property or liberty under this
constitutional provision except upon a judicial determination
obtained in the manner prescribed by law for proceedings in
the courts. There must be an adjudication had in such pro-
ceedings in order to deprive the citizen of his liberty or prop-
erty. The proceedings authorized by the statute quoted above
are summary in their nature. They do not accord with the
ordinary course pursued in judicial proceedings. The pivotal
questions in the case,—namely, whether defendant owned prop-
erty, whether he fraudulently disposed of it, whether it was un-
der his control so that he could surrender it, and whether he
fraudulently put it out of his control,—were not determined
in the manner prescribed for the decision of such questions
when the rights of property depend thereon. They were de-
cided in a summary proceeding, and not in a case wherein the
usual course of the law was pursued. The difference between
this summary proceeding and an ordinary action at law or in
chancery need not be suggested to the legal mind. They are
many, and essential to the just administration of the law.

It is true that a commitment for contempt may be made in a summary manner; but it can only be made when based upon a prior adjudication of the matter which is the foundation of the contempt. For a disobedience of a lawful order of a court, an offender may be committed as for a contempt. But the order disobeyed, to make the commitment lawful, must have been rendered in the exercise of lawful jurisdiction. An order not made in a cause pending, or, if in such cause, not in accord with the essential proceedings prescribed by law, will not support a commitment for contempt. So, for contemptuous acts done in the presence of a court, the fact of such acts must be lawfully found and adjudicated by the court before the order of commitment can be made. Such adjudication must be made in the manner recognized by statute or the long-continued practice of the courts. But for contempts not committed in the presence of the court, the order disobeyed must have been made in proceedings which are recognized as being of the " due process of law." I reach the conclusion that the statute above quoted, authorizing the proceedings in this case, is in conflict with the constitution. These views are in accord with and supported by *Ex parte Grace*, 12 Iowa, 208. See, also, *State v. Start*, 7 Id., 501.

It is my opinion that the order committing the defendant should be set aside and held for naught, and that a judgment to that effect should be entered here, and certified to the judge of the second judicial district.

ADAMS, J., concurs in this dissent.