**Fred ABBIT, Individually, and on behalf of all others similarly situated, Plaintiff,**

**v.**

**Conrad BERNIER, Deputy Sheriff, Windham County, State of Connecticut, as an Individual, and in his official capacity, et al., Defendants.**

**Civ. No. H–74–64.**

United States District Court,
D. Connecticut.

Dec. 24, 1974.

58

Raymond R. Norko, Tolland-Windham Legal Assistance, Inc., Danielson, Conn., for plaintiff.

Albert J. Callahan, Callahan & Devokaitis, Hartford, Conn., for defendants.

Robert K. Killian, Atty. Gen., of Conn., Timothy O. Fanning, Asst. Atty. Gen., of counsel, on the brief for State of Conn. as amicus curiae.

Frank B. Cochran and Kimball Haines Hunt, Conn. Civil Liberties Union Foundation, Inc., Hartford, Conn., on the brief for Conn. Civil Liberties Union Foundation, Inc. as amicus curiae.

Before SMITH, Circuit Judge, and CLARIE and BLUMENFELD, District Judges.

## MEMORANDUM OF DECISION

J. JOSEPH SMITH, Circuit Judge:

■ Fred Abbit, a judgment debtor against whose body a writ of execution has issued, seeks to enjoin the enforcement of Connecticut's body execution statute, Conn.Gen.Stat.Ann. § 52–369, and to secure a declaration of its unconstitutionality. He proceeds in this civil rights action, 42 U.S.C. § 1983, 28 U.S. C. § 1343(3),[1] against the Connecticut

---

1. § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

§ 1343. Civil rights and elective franchise

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance,

officials charged with administering Conn.Gen.Stat.Ann. § 52–369 as to him.[2] Their enforcement of the statute allegedly- deprives the plaintiff under color of state law of his Sixth Amendment right to counsel, Eighth Amendment right to be free from cruel and unusual punishment, and Fourteenth Amendment guarantees of due process and equal protection. Because this challenge to the state statute presented a substantial question of constitutionality, this three-judge court has been convened under the mandate of 28 U.S.C. §§ 2281, 2284.

■■ Since the suit is brought under 42 U.S.C. § 1983, there is no jurisdictional requirement that the plaintiff prove a minimum amount in controversy, Douglas v. City of Jeannette, 319 U.S. 157, 161, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), and the statutory prohibition, 28 U.S.C. § 2283, on federal court injunctions against state court proceedings[3] does not apply, Michum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Nor does the "actual controversy" requirement of Article III and the Declaratory Judgment Act, 28 U.S.C. § 2201, present an obstacle to jurisdiction in this case, for the issuance of a writ against the plaintiff's body gives concreteness to his concern that he may soon be deprived of the physical freedom which he currently enjoys. *Compare,* Steffel v. Thompson, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) *with* Younger v. Harris, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

For the reasons set forth below, we find that the defendants' enforcement of Conn.Gen.Stat.Ann. § 52–369 denies Abbit his federal constitutional right to the equal protection of the laws. We therefore enjoin the defendants from levying execution on the plaintiff's body. In addition, we declare that Connecticut's body execution statute is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.

## I. The Statute

Conn.Gen.Stat.Ann. § 52–369, as most recently amended, provides:

If personal estate of the debtor sufficient to satisfy the debt and charges cannot be found, and the creditor does not agree to take the debtor's lands, the officer shall levy the execution on the body of the debtor, unless exempt by law from imprisonment on such execution, and commit him to jail in the county in which the execution is being levied, where he shall remain until he pays the debt and the lawful fees and charges, or is discharged in due course of law. Each officer who commits any person to prison by virtue of distress or execution shall deliver an attested copy of the writ or execution to the commissioner of correction, or his authorized agent, which shall be a sufficient warrant to him to hold such person in safe custody until he is delivered in due course of law. If the debtor, after such levy of execution upon his body, is discharged or released from such imprisonment, or released by the officer serving the execution, by direction of the creditor, he shall not be liable to imprisonment again on the judgment upon which

---

regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

. . . . . .

2. The defendants are Conrad Bernier, deputy sheriff of Windham County, David Derosier, high sheriff of Windham County, and John Harris, commissioner of the Superior Court. The suit was instituted as a class action, but since Abbit can point to no one similarly situated, the elements needed to satisfy Fed.R. Civ.P. 23 are plainly lacking. Our award of declaratory relief, however, *see infra,* in effect substitutes for an affirmative class action ruling.

3. Presumably a proceeding under Conn.Gen. Stat.Ann. § 52–369 constitutes a "proceeding" within the meaning of 28 U.S.C. § 2283. *See,* Hill v. Martin, 296 U.S. 393, 403, 56 S. Ct. 278, 80 L.Ed. 293 (1935) ; Mills v. Provident Life & Trust Co. of Philadelphia, 100 F. 344 (9th Cir. 1900).

such execution issued, but the same may be collected out of his property. Although this provision embraces all judgment debtors by its language, Conn.Gen.Stat.Ann. § 52–355 exempts certain categories of judgment debtors from its terms—most prominently, persons in debt for a judgment in an action "founded on contract merely, express or implied" (with several exceptions).[4]

■ Since Abbit's indebtedness derives from his unsuccessful defense of a *tort* claim, he is not protected by § 52–355 from the body execution authorized in § 52–369. Whether his tort was an ordinary one or involved some exacerbating feature such as fraud or malice—a distinction made by various states in their body execution statutes[5]—is irrelevant to the operation of the Connecticut statute. Campbell v. Klahr, 111 Conn. 225, 229, 149 A. 770 (1930). *See also,* Chasnoff v. Porto, 140 Conn. 267, 99 A.2d 189 (1953); Gilman v. Joseloff, 135 Conn. 595, 597, 67 A.2d 551 (1949); Sibley v. Krauskopf, 118 Conn. 158, 160, 171 A. 4 (1934); Robinson, Attachment of the Body upon Civil Process, 7 Yale L.J. 295, 296 (1898). Nor does the Connecticut law attach significance to another frequent ground for distinction[6]: whether or not a debtor with insufficient property in the state to satisfy his debt may be concealing assets in the state or have fraudulently secreted his

assets out of the state to avoid execution on them.

Very simply, then, Conn.Gen.Stat. Ann. § 52–369 sanctions imprisonment for a tort claim indebtedness without more. If the judgment debtor is in fact incapable of making payment—Abbit's apparent situation—there will be time enough for him to prove that by taking the poor debtor's oath from his cell. Conn.Gen.Stat.Ann. § 18–56.

## II. Constitutional Validity

The plaintiff levels four independent constitutional attacks on the Connecticut body execution statute: arrest and incarceration without representation by appointed counsel infringes Abbit's Sixth Amendment right to counsel; body execution of a person because of his indigence amounts to a punishment for status violative of the Eighth Amendment's prohibition on cruel and unusual punishment; arrest and incarceration without notice and hearing constitutes a denial of due process under the Fourteenth Amendment; and imprisonment of persons without the means to prevent their incarceration deprives those persons of their Fourteenth Amendment right to the equal protection of the laws. Since we find the latter ground dispositive, we do not pass on the plaintiff's other contentions.[7]

---

4. Also exempt are persons in debt for judgments rendered in actions for money received by a fiduciary and in suits to recover costs assessed in a summary process action.

5. A comprehensive listing of current (to 1971) state body execution laws, constitutional and statutory, may be found in Note, Imprisonment for Debt: In the Military Tradition, 80 Yale L.J. 1679, 1679 n. 1 (1971). (Under 28 U.S.C. § 2007, a federal district court follows the body execution law of the state in which it is sitting.) An attempt to categorize state body execution laws in terms of the scope of the prohibition against imprisonment for debt was previously made in Note, Present Status of·Execution against the Body of the Judgment Debtor, 42 Iowa L.Rev. 306, 307–08 (1957). *See generally,* Freedman, Imprisonment for Debt, 2 Temple L.Q. 330 (1928); Ford, Imprison-

ment for Debt, 25 Mich.L.Rev. 24 (1926); Comment, 37 Colum.L.Rev. 1216 (1937).

6. *See* statutes cited in Note, *supra,* 42 Iowa L.Rev.· 306 at 307–08. *Cf.,* Eikenberry & Co. v. Edwards, 67 Iowa 619, 25 N.W. 832 (1885).

7. As the textual discussion below indicates, the alleged due process deficiency is the driving force of the equal protection ground upon which we base our decision. On the dubiousness of the Sixth-Fourteenth Amendment claim, *see* n. 12 *infra.* For the reasons set forth immediately below, we are also skeptical of the Eighth-Fourteenth Amendment contention.

Basically, the plaintiff's Eighth Amendment claim is an attempt to fit the same argument made for equal protection under a "cruel and unusual punishment" rubric. The

The force of the plaintiff's equal protection claim rests squarely on the principle informing the Supreme Court's decisions in Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). Both cases involved the constitutionality of keeping a person in prison beyond the maximum term set by statute for the particular offense in order to compensate for his inability to pay a fine included in his sentence. On the two occasions, the Court held that this difference in time served according to "ability to pay" constituted an "impermissible discrimination" violative of the Equal Protection Clause, *Williams, supra,* 399 U.S. 235 at 241, 90 S.Ct. 2018, 26 L.Ed.2d 586. The Court in *Williams* did take care to limit its holding to instances involving prison terms in excess of a statutory ceiling. Lower courts have, how-

ever—and we believe quite rightly—read these cases for their broader implication: that imprisoning someone "solely because of his indigency," *Tate, supra,* 401 U.S. 395 at 398, 91 S.Ct. 668, 28 L.Ed.2d 130, works a denial of equal protection. Thus, the Second Circuit has relied upon *Tate* and *Williams* to require that persons forced to spend time in jail due to their inability to meet bail be given credit against their sentence for this time served which one wealthier would have been able to avoid. Paroutian v. United States, 471 F.2d 289 (2d Cir. 1972); United States v. Gaines, 449 F.2d 143 (2d Cir. 1971) (per curiam). And the Fifth Circuit has invoked the *Tate-Williams* doctrine to strike down the "$30 or 30 days" type sentence.[8] Frazier v. Jordan, 457 F.2d 726 (5th Cir. 1972); Burton v. Goodlett, 480 F.2d 983 (5th Cir. 1973).

Under Conn.Gen.Stat.Ann. § 52–369, the sheriff may levy the execution on

---

tack adopted departs from the traditional understanding of the prohibition against cruel and unusual punishment. First of all, the "punishment" at which the Eighth Amendment is directed to be "a penalty inflicted by a judicial tribunal in accordance with law in retribution for *criminal* conduct." Negrich v. Hohn, 246 F. Supp. 173, 176 (W.D.Pa.1965), aff'd, 379 F. 2d 213 (3d Cir. 1967) (emphasis added). *See also,* Zwick v. Freeman, 373 F.2d 110, 119 (2d Cir.), cert. denied, 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967); In re Walsh, 64 Misc.2d 293, 315 N.Y.S.2d 59, 61 (Westchester Cty. Fam. Ct. 1970). Although body execution of an indigent may be characterized as "punishment" for certain purposes, then, it is punishment not for the commission of a crime but, instead, for the failure to make good a civil judgment debt.

Even assuming, however, that this obstacle might be by-passed as formal or semantic, it is improbable that body execution qualifies as "cruel and unusual." In his amended complaint, the plaintiff argues that body execution of an indigent violates the Eighth Amendment because it is punishment for "a condition beyond the control of the individual." The plaintiff's reliance on Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L. Ed.2d 758 (1962), is implicit. In *Robinson* the Court invalidated a California law making (under the majority's construction) narcotics addition, without more, a criminal offense. The plaintiff reads *Robinson* for the

proposition that a person may not be punished for an act which he could not help from doing. This extension of *Robinson,* however, has already been foreclosed by the Court in Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). Both Justice Marshall's plurality opinion, *id.* at 533, 88 S.Ct. 2145, and Justice Fortas' dissent, *id.* at 559 & n. 2, 88 S.Ct. 2145, each joined by four members of the Court, disclaimed the applicability of *Robinson* where acts are involved. Accordingly, although Abbit, as an indigent, could not help but not pay his judgment debt, *Robinson* offers him no relief: The statute punishes him for his act of omission (not paying) and not, the obvious causal nexus notwithstanding, for being indigent.

8. The *Williams* Court specifically declined to reach this question. *Williams, supra,* 399 U.S. 235 at 243, 90 S.Ct. 2018, 26 L.Ed.2d 586. One member of the Court has since intimated that the doctrine of *Tate* and *Williams* controls in the manner suggested in the above Fifth Circuit cases:

The type of penalty discussed above (involving the discretionary alternative of "jail or fine") presents serious problems of fairness—both to indigents and nonindigents and to the administration of justice. Cf. Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).

Argersinger v. Hamlin, 407 U.S. 25, 55 n. 17, 92 S.Ct. 2006, 2021, 32 L.Ed.2d 1530 (1972) (Powell, J., concurring).

the judgment debtor's body without any proof that the latter has the capacity to pay the debt. If the debtor in fact lacks this capacity, however, then he is being punished for his indigence. And as the Second Circuit confirmed in United States v. Gaines, *supra,* 449 F.2d 143 at 144, imprisoning a man "solely because of his lack of wealth" is precisely what *Williams* and *Tate* have proscribed as a matter of equal protection. Indigents go to jail under § 52–369 while those of greater means have the keys to their cell in their pockets.

■■ We therefore enjoin the application of § 52–369 to Abbit and, further, declare the statute unconstitutional under the Fourteenth Amendment's Equal Protection Clause. Although the statute does not expressly exclude the possibility of a pre-incarceration hearing to determine the judgment debtor's ability to pay the debt, the Connecticut courts have acquiesced in the statute's consistent application without such a hearing and have thereby adopted an exclusionary construction as their own. *See, e. g.,* Campbell v. Klahr, *supra,* 111 Conn. 225 at 226, 149 A. 770.[9] Authority for this construction of the statute may also be drawn from the legislature's express provision for a pre-incarceration inquiry into ability to pay in the closely analogous non-support context:[10] From this

evidence we infer that had the Connecticut legislature intended that there be pre-incarceration hearings under the body execution statute, it would probably have provided for them in no uncertain terms. Under this view of the statute, we do not limit our adjudication of constitutionality to the statute as applied but, rather, strike down the law for facial unconstitutionality.

### III. Due Process Requirements for Reformulation

■■ The denial of equal protection which we find inherent in Conn.Gen. Stat.Ann. § 52–369 has an obvious cure: provide hearings prior to incarceration to determine a debtor's ability to pay the judgment debt. If a person is concealing assets within the state or has fraudulently secreted some out of state, imprisonment for his judgment debt would serve the lawful purpose of compelling disclosure of real and personal property rather than the impermissible end of punishing the debtor.[11] *See* Comment, Body Executions and the Jail Limits Bond in Michigan, 34 U.Det.L.J. 273, 277 (1956). *Cf.* Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948) (civil contempt for failure to obey turnover order requires inquiry into present possession of property which is subject of order).[12]

9. We reject the state's suggestion that any requirement for a pre-incarceration hearing would be superfluous because the judgment debtor already has the option of seeking to enjoin the statute's application to him. Brief of Amicus Curiae at 5–6. As our discussion in n. 12 *infra* should make clear, the constitutionally requisite hearing and that procurable by a bill for injunctive relief are hardly fungible.

10. Conn.Gen.Stat.Ann. § 53–304 provides:
    (a) Any person who neglects or refuses to furnish reasonably necessary support to his wife, child under the age of eighteen ·or parent under the age of sixty-five shall be deemed guilty of nonsupport and shall be imprisoned not more than one year, unless he shows to the court before which the trial is had that, owing to physical incapacity or other good cause, he is unable to furnish such support. . . .

11. If the debtor in fact has property outside the state but did not fraudulently convey it there, the creditor must go to the foreign jurisdiction and sue on his judgment there. *Compare,* Eikenberry & Co. v. Edwards, 67 Iowa 619, 25 N.W. 832 (1885) *with* James v. Powell, 19 N.Y.2d 249, 257, 279 N.Y.S.2d 10, 15, 225 N.E.2d 741, 745 (1967). *See also,* Harris v. Balk, 198 U.S. 215, 222, 25 S.Ct. 625, 49 L.Ed. 1023 (1905).

12. In deciding whether or not to draft a successor to § 52–369, however, the Connecticut legislature may wish to consider the type of hearing which would meet constitutional norms. In broadly outlining the process due a debtor before execution may be levied upon his body, it is necessary to proceed from the general standard stated in Goldberg v. Kelly:
    The extent to which procedural due process must be afforded the recipient [of welfare] is influenced by the extent to which he may

Insofar as the ingredients of the process due the judgment debtor in a hearing to determine ability to pay (see note 12) may require further specificity or supplementation, the court will deal with such matters in the event that a new body execution statute in fact comes before it. In the case before us, we strike down Connecticut's existing body execution law, Conn.Gen.Stat.Ann. § 52–369, under the Equal Protection Clause. The state of course will, if it seeks to cure the constitutional infirmity besetting § 52–369, be required to take considerable pains to ensure that a judgment debtor is not imprisoned for his indigence. The foregoing may serve as the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

So ordered.

be "condemned to suffer grievous loss," Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 647, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. 397 U.S. 254, 262–263, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970).

Attention must be directed, therefore, to the seriousness of the deprivation visited on the individual affected by the operation of § 52–369. Since the loss suffered in this instance involves one's cherished physical freedom, the process due one exposed to this possible loss will necessarily be considerable. Appointed counsel, for example, would likely be the right of every judgment debtor threatened with body execution. In Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Supreme Court made representation by counsel the *sine qua non* to a sentence of imprisonment. *Argersinger* does not strictly control the case before us: In holding that a right to counsel is an ingredient of the fair trial guaranteed by the Fourteenth Amendment's Due Process Clause, the Court relied upon the Sixth Amendment as incorporated by the Fourteenth; and the Sixth Amendment addresses the right to counsel issue in the context of a criminal prosecution, whereas the case currently under review deals with a defendant's rights in an action brought in aid of the court's civil jurisdiction. Much of what persuaded the Court in *Argersinger* to find a right to appointed counsel, however, is relevant to the due process question before this court—in particular, the difficulties of a layman defending himself against loss of his freedom in adjudication of factual, if not also legal, issues of potential complexity, *id.* at 33–34, 92 S.Ct. 2006. Although a contempt proceeding may also result in imprisonment, a right to counsel is unrecognized largely because these possible intricacies are missing. While a § 52–369 hearing on ability to pay would attempt to weigh the validity of reasons for not complying with a court order, a civil contempt proceeding inquires no further than the presence or absence of compliance.

Another due process guarantee triggered by the threatened deprivation of freedom under a renovated § 52–369 would be the opportunity to present witnesses in one's defense, *cf.*, Washington v. State of Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), as well as to confront and cross-examine adverse witnesses, *cf.*, Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). The adjudicatory body—a court of law—would be obliged to state formally its findings of fact and conclusions of law. Moreover, unless the judgment creditor could prove—perhaps by "beyond a reasonable doubt," *cf.*, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), but at least by "clear and convincing" evidence, *cf.*, Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)—that the debtor was concealing property in the state or had frustrated the judgment by secreting property beyond the jurisdiction, body execution would not lie.