## Ex Parte Diaz, alias "Martillo."

### Application for a writ of Habeas Corpus.

No. 33.—Decided June 16, 1904.

Constitution of the United States.—Before the Constitution of the United States can be held to be in force in Porto Rico, it is necessary for Congress to extend the same to the Island, either expressly or by implication.

Id.—Grand Jury—Insular Courts.—The provisions of the Fifth Amendment to the Constitution of the United States are not applicable to the insular courts, wherein an indictment by a grand jury is not necessary in order that a defendant may be legally convicted therein.

Id.—The insular courts of Porto Rico are not considered federal courts within the meaning of the Constitution of the United States.

Id.—Irregular or Defective Proceedings—Void Judgment.—The provisions of article 461 of the Code of Criminal Procedure cannot be invoked, nor are the same at all applicable in a *habeas corpus* proceeding, inasmuch as whatever errors may be committed in such a proceeding they cannot be considered in a proceeding of this character, unless they are such as to go to the jurisdiction of the court and involve the nullity of the judgment.

Due Process of Law—Equal Protection Before the Law.—Where a person has been tried and convicted in accordance with laws which are equally applicable to all citizens generally, and which trial has been prosecuted under the regular and ordinary procedure applicable to such cases, he cannot maintain that he has been denied the right of equal protection before the law.

Habeas Corpus—Speedy Trial—Errors of Procedure.—The right of every defendant in Porto Rico to have a speedy trial being a statutory and not a constitutional provision, the courts have ample power in this respect, and whatever may be the errors committed by them in this respect, they are errors of procedure only and cannot be considered on *habeas corpus*.

Id.—Legality of Imprisonment—Appeal—Writ of Error.—On *habeas corpus* only matters affecting the legality or the illegality of the imprisonment undergone by the petitioner can be decided, and this writ cannot be made to serve the purpose of an appeal or a writ of error.

Id.—How Petition Should be Prepared.—Petitions for the writ of *habeas corpus* should contain no matter which is extraneous to the proceeding, but should be confined to such matters as may be considered by the court.

Id.—Jurisdiction of the Person of the Defendant and of the Crime.—Where the court appears to have had jurisdiction of the person of the defendant and of the crime of which he was accused, the petition for enlargement on *habeas corpus* will be denied.

The facts are stated in the opinion.

*Mr. Juan R. Ramos,* for petitioner.

*Mr. del Toro, Fiscal,* for the People.

Mr. Justice MacLeary delivered the opinion of the court.

On the 26th day of August, 1902, a riot occurred in the town of Humacao. An attack was made upon a certain drug store, which was known as the headquarters of one of the political parties, by a mob supposed to have been composed of the worst element of the other. During this riot three persons were killed and several wounded. Among the dead was Octavio Reyes Guzmán. Several investigations were made of the circumstances attending this riot, and testimony appeared to be very difficult to procure. At last on the 25th day of November, 1902, an information was presented against Pedro Diaz, commonly called "Martillo"

(Hammer), charging him with the murder of Reyes, and he was duly arraigned and pleaded not guilty thereto. His trial followed and he was convicted of murder in the first degree and sentenced to death. From this judgment he took an appeal to this court, and after due consideration the judgment of the trial court was affirmed. No appeal was taken from this judgment to the Supreme Court of the United States. An application was made to the Governor for the pardon of the prisoner Diaz, and a reprieve was granted for thirty days to allow more time for investigation. This application for *habeas corpus* was made on the 10th day of May, 1904, by Mr. Juan R. Ramos, attorney for the petitioner. In his application he sets out nine separate grounds on which he bases his claim that the writ should be granted. They are as follows:

"1.—That the accusation against the petitioner, Pedro Diaz (a) Martillo, having been presented on the 29th day of December, 1902, by the *fiscal* for the crime of murder in the first degree committed on the person of Octavio Reyes Guzmán, on the night of the 26th of August of the present year, the accused, who presents this application, was not subjected to indictment before a grand jury, thus failing to obey the express order contained in the Fifth Amendment to the Constitution of the United States, which says: 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger.'

"2.—That the court having designated the 13th of January, 1903, for the arraignment, and the defendant having denied the charge, he was allowed until the 21st day of the same month in which to answer the charge through his lawyer, who furthermore asked that the *fiscal* be required to deliver the list of witnesses which he intended to introduce on the trial, in compliance with section 142 of the Code of Criminal Procedure; which list the *fiscal* did not present, notwithstanding the fact that he was ordered so to do, the lawyer for the defense being obliged to answer to the accusation without that imperative precept of our law having been complied with, to the prejudice of a substantial right of the accused;

which fact appears in all clearness in the copy of the proceedings and documents sent by the office of the secretary of the District Court of Humacao.

"3.—That notwithstanding the foregoing statement, the 16th day of February, 1903, was designated for the day of the trial before the petit jury, and that day having arrived, in violation of section 448 of our Code of Procedure, said proceedings were suspended, without any resolution being made known as a reason therefor, and without the same being requested by the accused, notwithstanding the fact that the jury had been deliberating and of the panel being constituted in sufficient number to form said jury, which is proved by the fact that in these same days two cases of murder in the first degree came up, one being committed on the very night of the 26th of August in Humacao, and one in Yabacoa; against which resolution, which does not even appear in the record, the lawyer for the defense filed a complaint, requesting that the trial take place, if not on the day designated, at least on the 21st of February of the same year, with the panel already constituted, or with another selected, by chance; to which writing no answer was made, not even a negative one, an order being issued in which, without giving any reason for the same the 18th of May is designated, this order being made on the 28th of April. Thus the petitioner was deprived of the right, granted by the Constitution of the United States, and the laws of Porto Rico, to have a speedy and impartial trial, as well as another sacred right as guaranteed by the Fourteenth Amendment to the said Constitution, which is that no citizen can be deprived of his liberty, life or property, without due process of law.

"4.—That from section 191 of our Code of Criminal Procedure it is seen that the accused had a substantial right to be heard and tried by a jury selected from the list of jurors in practice; however, he was compelled to be tried by a jury selected from the list of two hundred which was to be formed the first Monday in April, 1903, by the commissioners appointed in the manner prescribed in sections 191 and 196 inclusive, which list should contain the names of the jurors exercising such office during the years subsequent to the appointment of the commissioners. It is thus, then, that the petitioner was tried on the 18th of May, 1903, by a jury selected by chance from among the two hundred names forming the new lists made by the commissioners in April of the same year, 1903, so that he was heard and tried by a jury without jurisdiction, because it should act from May, 1904 to April, 1905, which was the year subsequent to the

appointment of the commissioners to form the list of the two hundred jurors from among the residents of the district competent to serve, which is supported by the certificate accompanying, numbered one.

"5.—As stated above, the 16th day of February being designated for the oral hearing, the same was postponed until the 18th of May, 1903, one hundred and forty days expiring on account of said postponement without there being any just reason for the same, before the accused was submitted to trial, which trial should have taken place within one hundred and twenty days after the presentation of the accusation: for which the case against the accused should have been dismissed and a new information formulated, as the crime in question is a felony according to section 452 of our Law of Procedure. Therefore a violation of section 448 of the Code of Criminal Procedure, and of the Fourteenth Amendment to the Constitution, has been committed, and consequently the judgment rendered by the court on the merits of the verdict of guilty is illegal, and the imprisonment being suffered by the petitioner is also illegal, either on account of the lack of jurisdiction on the part of the jury which tried him, or also on account of the fact that the cause should have been dismissed. All of which appears in the record of the proceedings and the investigation of the act, and was the object of an allegation by the defense, which in the name of the petitioner took an appeal to this court, but of which no notice was taken, and so violating section 1 of the Law of the 12th of March, 1903, changing the Supreme Court from a court of cassation to a court of appeals, it having been the former up to that time.

"6.—That a request having been made by counsel for the defense that a certified copy of the record in the case prosecuted against Luis Delgado and others for the crime of perjury, in which cause there appeared declarations of the two only witnesses for the prosecution, and by whose declarations it was intended to prove the falsity with which said witnesses presented themselves against the petitioner herein, be presented in these proceedings, said request being denied in spite of the intimate relation existing between the two criminal causes: sections 244 and 245 of the Code of Criminal Procedure being infringed, and therefore prejudicing the substantial right of the accused to prove the veracity with which the witnesses against him expressed themselves; which act was the only evidence of which the petitioner could make use, because the proceedings in the investigation of the occurrences of the night of the 26th of August, taken by Justice of the Peace Francisco López Cepero Nater and by Don An-

drés B. Crosas, were sent to the Attorney General on account of charges pending against the captain and several policemen, in which office it appears that they were pigeon-holed, as it is proved that not even the representative of the People of Porto Rico could make use of them in the case prosecuted against the petitioner herein, and in another case against the policeman Geron for the crime of murder in the first degree; to which records of proceedings were attached important autopsies of the deceased, on that night of general riot in Humacao.

"7.—That in spite of the counsel for the defense having requested in due time and form that a new trial be granted, this was denied, infringing sections 301 and 303 of the Code of Criminal Procedure, which recognize that substantial right of the accused, and therefore section 461 of the same law has been violated.

"8.—That the principal object of the appeal from the judgment rendered against the defendant was the reversal of the judgment, said appeal being declared not well taken for reasons of personal appreciation, not appearing of course on the proceedings of the trial, as may be seen by reading the final judgment, which the defendant requests in view of these *habeas corpus* proceedings, a copy issued by the office of the secretary being attached to the same.

"9.—That it being set forth in section 14 of the Organic Law of the 12th of April, 1900, passed by the House of Representatives and the Senate, that the statutory laws of the United States not inapplicable, except as otherwise provided, shall have the same force and effect in Porto Rico as in the United States, except the Internal Revenue Laws, which in view of the provisions of section 3 shall not have force and effect in Porto Rico; it is evident that the Legislative Assembly of Porto Rico, on passing the jury law, should have created a grand jury, and if it omitted it in our Code of Criminal Procedure and in the Law of the 12th of January, 1901, establishing trial by jury in Porto Rico, it is evident that it failed to comply with the constitutional provision, which gives to the defendant herein a right to demand that his indictment be made before a grand jury; with more reason after the Supreme Court of the United States has declared in the case of Miss González that Porto Ricans are not aliens in the United States.

"For which reasons, and after it having been demonstrated:

"1. That the defendant is illegally held a prisoner under a judgment and verdict contrary to the laws of the United States.

"2. That the defendant is also illegally held a prisoner on account of the nullity of the verdict, according to the laws of Porto Rico; and

"3. That the verdict being null the District Court of Humacao had no jurisdiction to pronounce the sentence imposed upon the petitioner herein."

In his brief filed on the trial he shifts his ground and rearranges the presentation of his case, complaining of the six following alleged errors:

"*First.*—The violation of the Fifth Amendment to the Constitution of the United States, which says, 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger.' (United States Constitution, Fifth Amendment.)

"A person sentenced and confined in prison for a felony, his case not having been presented before a grand jury for indictment, may make application, and is entitled to have a writ of *habeas corpus* issued in his favor. (*Ex parte Wilson,* 114 U. S. 417; *In re Bain,* 121 U. S. 1.)

"The Foraker Law says, in its section 14, that the statutory laws of the United States will have the same force and effect in Porto Rico as in the United States, exception being made of the Internal Revenue Laws; and the Constitution being in force in Porto Rico in its prohibitory character, and therefore in so far as it relates to the individual rights of a Porto Rican citizen it is evident that it has been violated; not only the Fifth Amendment aforesaid, but also that precept set out in our Organic Law.

"The famous American jurisconsult, Mr. Dane, who as a member of The National Congress, took an active part in the famous statute 1787 for the government of the Northwest Territory, believes that there is no room for discussion in that informations or accusations made by the *fiscal* (prosecuting attorney) direct to the court, can be made in felony cases or capital cases, without violating the Fifth Amendment to the Constitution of the United States. 'This kind of information,' said the distinguished jurist, 'would be made by the prosecuting attorney to a grand jury, by means of indictments.' (7 Dane Abr. 280; Cooley Const. Limit. p. 291.)

"*Second.*—Violation of section 461 of our Law of Procedure (section 461 of the Code of Criminal Procedure). An error of procedure

committed by the court delivering the sentence, justifies the reversal of the judgment, or a writ of *habeas corpus,* always, and especially when the substantial rights of the accused are prejudiced thereby. (*People* v. *Murback,* 64 Cal. 370; *Ex parte Bernert,* 62 Cal. 529; *People* v. *Nelson,* 56 Cal. 77.)

"*Third.*—A territorial court, different from a state court, is a United States court, and therefore a territorial court is included within the Fifth Amendment, as well as in the Seventh Amendment to the Constitution of the United States.

"*Fourth.*—Violation of the Fourteenth Amendment to the Constitution of the United States, and of the right which the laws of Porto Rico give to every individual; which is that no citizen may be deprived of his liberty, life or property without due process of law. (U. S. Constitution, Fourteenth Amendment.)

"*Fifth.*—Violation of one of the great rights guaranteed by the Constitution of the United States to every accused person, which is the right to demand a speedy trial.

" 'This express provision of the Constitution,' says Mr. Cooley in his work on *Constitutional Limitations,* 'tends to the highest ends of justice. In countries like ours,' continues the commentator, ' where the public accusers are elected by the people or designated by the government for a specified period of time, it becomes necessary to enforce the precept of the Constitution of the United States which declares that when an individual wishes and desires a speedy trial there is no delay which is reasonable as far as the prosecuting attorney is concerned, with the exception of procuring the attendance of witnesses.' (Cooley on Const. Limit., p. 439 *et seq; In Re Bergeron,* 133 Cal. 349.)

"The Supreme Court of the State of Georgia in the case of *Watts* v. *the State,* says:

"Although a great deal should be left to the good judgment of the prosecuting officers in such cases, and though it is true that .the court would not compel the Government to appear for trial at the first meeting of the jurors, however, and notwithstanding the foregoing, the representative of the State should make a sworn statement as to the causes which prevented his attendance on the trial, and if it is shown by the sworn statement that there. is just cause for the same, then, and then only, should the trial be postponed. (*Watts v. the State,* 26 Georgia, 231; Cooley on Const. Limit., pp. 440-441.)

"And there are courts which have even gone further. The afore-mentioned Mr. Cooley says in his commentaries that the Supreme Court of Montana, in the case of the United States against Sacramento, declared that a sworn declaration given by the prosecuting attorney stating that the State was not prepared for the trial, was not sufficient reason for the portponment of the same. That a specific declaration was necessary, in which, besides alleging that the State was not prepared, the names of the witnesses should be included, the steps taken by the public officer to procure the appearance of the same, and the particulars which such officer proposed to prove by their testimony. So that if the accused desired he could admit the truth of those particulars, and obtain in this way the speedy termination of the case, with no delay whatever. (*U. S. v. Sacramento,* 2 Montana, 239; Cooley Const. Limit., 441; And see: *In re Garvey,* 7 Colorado, 502.)

"*Sixth.*—The judgment rendered by this Supreme Court is irregular and null for the reasons before mentioned, because in rendering such judgment and pronouncing such sentence against the petitioner, affirming that rendered by the District Court of Humacao, it has prejudiced the substantial rights of the petitioner."

We will first examine the case along the lines indicated by the learned counsel in his oral argument and his written brief filed herein, and just copied at length. The first reason presented in his brief by counsel, for the enlargement of the prisoner is that the Fifth Amendment to the Constitution of the United States has been violated on his trial, because he was not indicted by a grand jury. It has been repeatedly decided by this court, following the decisions of the Supreme Court of the United States and other authorities, that the Constitution of the United States has not been expressly extended to Porto Rico, and it is well known that in this Island, at least in so far as refers to the insular tribunals, the grand jury system does not exist. By Article IX of the Treaty of Paris it is expressly stipulated that:

"The civil rights and political status of the native inhabitants of the territories hereby ceded (including Porto Rico) to the United States shall be determined by Congress."

For nearly four months prior to the promulgation of this treaty a military government had been in absolute control of the Island of Porto Rico, and continued so in control until the first of May, 1900, nearly fifteen months thereafter, when it was superseded by the civil government instituted under the Act of Congress, commonly called the Foraker Law.

During the time of the military government and since the civil government was inaugurated, many accused persons have been tried and sentenced to the penitentiary, and several condemned to death and executed solely on the accusation of the *fiscal,* and without the intervention of a grand jury. The inquests known to the common law of England as grand juries have never been known in this island, except in the Federal Court, where they are specially provided for under the Foraker Law. Nothing in the Foraker Law states expressly the intention of the Government to extend to this Island the benefits of the Constitution of the United States, and although several cases have been brought before the Supreme Court of the United States, in which this matter was incidentally involved, there has never yet been any judgment of that court directly deciding this question. But it has been announced in several opinions that foreign territory is not incorporated into the United States nor the Constitution of the United States extended to such territory until either expressly or by necessary implication such incorporation or extension has been made by an act of the legislative power. (Insular Tariff Cases 182 U. S. 1 to 391.)

In the case of *Hawaii* v. *Mankichi,* 190 U. S. 197, decided about a year ago, the Supreme Court of the United States held that the Fifth and Sixth Amendments to the American Constitution, providing for the presentation of indictments by a grand jury and the trial of cases before a petit jury were not in force in the Hawaiian Islands, between the 12th of August, 1898, the date of annexation, and the 4th of June, 1900,

the date of establishing territorial government, notwithstanding the fact that the Joint Resolution of Congress providing for the annexation of those islands distinctly announced that:

"Municipal legislation of the Hawaiian Islands, not enacted for the fulfillment of the treaties so extinguished, and not inconsistent with this joint resolution, *nor contrary to the Constitution of the United States*, nor to any existing treaty of the United States, shall remain in force until the Congress of the United States shall otherwise determine."

This being accepted as a correct enunciation of the law, how much the more then can it be held that the said amendments are not in force in Porto Rico now, and have never been; since the Organic Act of Porto Rico, commonly called the Foraker Law, passed by Congress on the 12th of April, 1900, has nothing whatever to say in regard to the American Constitution, but merely declares:

"That the laws and ordinances of Porto Rico now in force shall continue in full force and effect, except as altered, amended, or modified hereinafter, or as altered or modified by military orders and decrees in force when this Act shall take effect, and so far as the same are not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable, or the provisions hereof, until altered, amended, or repealed by the legislative authority hereinafter provided for Porto Rico or by Act of Congress of the United States." (Organic Act, P. R. Sec. 8; Rev. Stat. P. R. p. XVII.)

This authority in our view settles this question of the application of the Constitution of the United States in this Island in accordance with our decision, made and reaffirmed several times, under authority of the Insular Tariff Cases, reported in 182 U. S. on pp. 1 to 391, and other authorities. This court in considering the application of Hobart S. Bird for *habeas corpus* discusses the question at some length, and it is only necessary to make reference to that case for our views on this point. For the reasons stated in the opinion

rendered in the Bird case, which I had the honor to deliver, and for the further reasons hereinbefore stated, I cannot concede any effect to the first ground relied on by counsel for the prisoner. The Fifth Amendment to the Constitution is not in force in Porto Rico, and has never been. The Insular courts of Porto Rico are not considered by us to be federal courts within the meaning of the Fifth Amendment to the Constitution any more than territorial courts or state courts on the continent. They were not originally established by Congress but existed here at and before the change of sovereignty, and they have been reorganized by the Organic Act as they were found on the American occupation; and ample time and opportunity have been afforded during the last four years· of civil government for Congress or for the Insular Legislature to establish the grand jury system in this Island, if such establishment was demanded by the Constitution of the United States or desired by the People of Porto Rico.

*Second.*—The second ground assigned by counsel for the prisoner is an alleged violation of article 461 of the Code of Criminal Procedure, and he maintains that an error of procedure committed by the trial court justifies the revocation of the judgment on writ of *habeas corpus,* always, and especially so when the substantial rights of the accused are prejudiced thereby. Section 461 of the Code of Criminal Procedure reads as follows:

"Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right." (Revised Statutes of P. R. p. 730.)

. It will be seen that counsel for the prisoner states this proposition in the converse instead of the direct manner set forth in the Code. He refers to three California cases which are incorrectly cited, and when found and examined appear to have no bearing on the case. The proposition an-

nounced in the Code, even as stated by the prisoner's counsel, is correct, but it is not applicable on proceedings in *habeas corpus*. Had it been presented, as possibly it was, on the appeal, it would have been duly considered, and if found to be correct and justified by the record of the trial of the case in the district court, would have caused a reversal of the judgment; but on *habeas corpus* no error in procedure, unless it goes to the jurisdiction of the court, and thus nullifies the judgment entirely can prevail to release the prisoner from confinement. (*Harding ex parte,* 120 U. S. 782; *Yarbrough ex parte,* 110 U. S. 651; *Coy ex parte,* 127 U. S. 731.)

*Third.*—The third ground set out in his brief by counsel for the prisoner, in his behalf, states that a court of a territory, different from a court of a state, is a court of the United States, and consequently that a territorial court is comprehended within the Fifth Amendment, as it is also within the Seventh Amendment to the Constitution of the United States. No reference is made to any authority to support this proposition, and it is believed that none can be found in support thereof. On the contrary, in Gould & Tucker's Notes to section 1910 of the Revised Statutes of the United States, I find the following cases, holding that a territorial court is not a court of the United States, within section 1 of article III of the Constitution, and presumably within the meaning of the Seventh and Fifth Amendments: See Gould & Tucker's Notes to section 1910 of the Revised Statutes, page 471 thereof; where are to be found cited *Howard* v. *United States,* 22 Court of Claims Reports 305; *United States* v. *Beebe,* 2 Dakota, 292; *United States* v. *Bisel,* 19 Pacific Reporter 251: and *Murphy* v. *Murphy,* 25 Northwestern Reporter 806. On this point reference may be had also to the opinion of this court in the Bird case, from which the following extract is made:

"But aside from this view of the case, article Fifth of the Amendments to the Constitution of the United States has no application to

the insular courts, and indictments by grand juries are not necessary to the conviction of defendants in these courts any more than they would be in state courts or in the territorial courts in the United States. This is well settled in numerous cases, as is shown in the lectures of Mr. Justice Miller on the Constitution of the United States, Lecture 10, page 493, where the distinguished jurist, speaking of the Seventh Amendment says:

" 'This article of the Amendments to the Constitution, as well as all of the others from one to eight inclusive, applies to the power exercised by the Government of the United States and not to those of the States. This has been repeatedly decided. (Citing: *Livingstone* v. *Moore*, 7 Pet. 469; *The Justices* v. *Murray*, 9 Wall. 274; *Edwards* v. *Elliot*, 21 Wall. 532.')

"Nor can this provision have any application to the insular courts in the Island of Porto Rico, until they are made federal courts by an act of Congress. (*Reynolds* v. *United States*, 98 U. S. 145; *Eilenbecker* v. *District Court*, 134 U. S. 31; *United States* v. *Cruikshank*, 92 U. S. 542; *Walker* v. *Savinet*, 92 U. S 90; *Fox* v. *Ohio*, 46 U. S. 410; *Holmes* v. *Jennings*, 39 U. S. 549; *Presser* v. *Illinois*, 116 U. S. 252; *Ross* v. *McIntyre*, 140 U. S. 453; *Cook* v. *United States*, 138 U. S. 157; *Hurtado* v. *California*, 110 U. S. 516; *MacAllister* v. *United States*, 141 U. S. 174; *Permoli* v. *N. O.*, 44 U. S. 589.)

"We have been unable to find any decision of the Supreme Court which directly prescribes the status of territorial courts under the Seventh Amendment to the Constitution of the United States; but in the case of *Walker* v. *S. P. R. R. Co.*, decided in 1896, the question was presented by counsel and Mr. Justice Brewer, delivering the opinion of the court, said:

" 'We deem it unnecessary to consider the contention of defendant in error that the territorial courts are not courts of the United States, and that the Seventh Amendment is not operative in the territories, for by the act of April 7, 1874, (C. 80, 18 Stat. 27,) Congress legislating for all the territories, declared that no party "shall be deprived of the right of trial by jury in cases cognizable at common law;" and while this may not in terms extend all the provisions of the Seventh Amendment to the territories, it does secure all the rights of trial by jury as they existed at common law. (*Walker* v. *S. P. R. R. Co.*, 165 U. S. pp. 595 and 596.)

"This case was referred to with approval in the later case of *American Publishing Co.* v. *Fisher*, 166 U. S. 467.

"If the Seventh Amendment had applied to such courts it is quite probable that the decision would have been based on the Constitution rather than on the statute; and we may reasonably infer that the Supreme Court does not consider territorial courts to be federal courts within the purview of the Seventh Amendment.

"But the insular courts of Porto Rico, of original jurisdiction, are more nearly analogous to the trial courts of the states than to the territorial courts. They were not created by an Act of Congress but were in existence before the passage of the Foraker Law, which recognized them and continued them in force. (See section 33 of the Organic Act.) Porto Rico is not a territory, nor is it a state of the American Union, but its trial courts have many, if not all the attributes of said courts; and at the signing of the Treaty of Paris and all during the military government there was a complete judicial system in this island, which has only been modified and not entirely changed during civil government, up to the present time.

"For these reasons, even if the Constitution of the United States were in force in Porto Rico, the Seventh Amendment could not be considered as applying to its courts, but they would fall under the decisions quoted, holding that this Amendment has no application to state courts.

"Such a body as a grand jury has never been known in the insular courts of Porto Rico. There are now nearly a thousand prisoners in the penitentiary of Porto Rico, who would have to be turned out if this construction were put upon the penal laws; but if it were necessary to do justice in this case, this court would not hesitate to open the doors of every prison in the Island. However, such a construction is not warranted by any authority which has been presented to the court, or which can be found on diligent search."

For the reasons set forth in this opinion, as well as for other reasons not therein given, it is confidently held that the insular courts in Porto Rico cannot be considered as federal courts within the meaning of the Constitution of the United States, and that consequently the institution of the grand jury and the petit jury as provided for within the Fifth and Sixth Amendments to the Constitution of the United States, has no application to said courts.

*Fourth.*—The fourth ground set out in his brief by counsel for the prisoner seeking his enlargement is that the Four-

teenth Amendment to the Constitution of the United States is applicable to Porto Rico, and that neither Porto Rico nor any other state has any right to deprive any person of life, liberty or property, without due process of law, nor to deny to any one within its jurisdiction the equal protection of the laws. No reference is made to any authority other than the Fourteenth Amendment itself. Even conceding, for the sake of argument only that the principle announced in this article of the American Constitution is in full force and vigor in the Island of Porto Rico, we will see that the prisoner has nothing to complain of on account of any supposed violation of his rights therein secured. Counsel fails to show wherein the defendant was deprived of his liberty or his life without due process of law, unless it is in the fact that he was denied the privilege of being indicted by a grand jury. That question has been discussed herein and settled to our satisfaction under the first point presented in the brief of the learned counsel for the prisoner. In a well considered case, involving a consideration of the Fourteenth Amendment, Mr. Chief Justice Fuller makes the following remarks:

"Counsel asserts that the rights claimed under the Constitution of the United States were the right to due process of law, and the right to the equal protection of the laws.

"The right to the equal protection of the laws was certainly not denied, for it is apparent that the same law or course of procedure, which was applied to Tinsley would have been applied to any other person in the State of Texas, under similar circumstances and conditions; and there is nothing in the record on which to base an inference to the contrary.

"Was the right to due process of law denied? If the committing court had jurisdiction of the subject-matter, and of the person, and power to make the order for disobedience to which the judgment in contempt was rendered, and to render that judgment, then the court of criminal appeals could not do otherwise than discharge the writ of *habeas corpus* and remand the petitioner. The writ can not be availed of as a writ of error or an appeal, and if the commitment

was not void, petitioner was not deprived of his liberty without due process of law." (*Tinsley* v. *Anderson,* 171 U. S. 106.)

This language is entirely applicable to the case now under consideration. The same laws have been applied to Diaz as have heretofore been applied to all other persons. His conviction was the result of a regular trial under the existing laws of this Island, and if he can be liberated under this contention so can hundreds of others now confined in the insular penitentiary. Such being the case presented in the record, like the court of appeals of Texas, as far as this ground is concerned we "cannot do otherwise than discharge the writ of *habeas corpus* and remand the petitioner." But the Fourteenth Amendment has never been extended to Porto Rico as we have shown in discussing the first proposition advanced by the learned counsel for the prisoner. The case of *Mankichi* v. *Hawaii,* hereinbefore referred to, applies as well to the Fourteenth Amendment as to the Fifth and Sixth, as the principle is the same. And in a later case decided, since this case was submitted on argument, in the Supreme Court of the United States, it has been held that Congress is not required to enact for ceded territory, such as Porto Rico, a system of laws putting in force all the safeguards of the Amendments to the American Constitution. (See *Door & O'Brien* v. *The Philippines,* not yet officially reported).

*Fifth.*—In the fifth proposition on which his argument is based, the counsel for the prisoner also alleges that he has been deprived of a speedy and impartial trial, guaranteed to him by the Constitution of the United States, and quotes Cooley on Constitutional Limitations, pp. 439 *et seq.,* also the case of *Begerow ex parte,* 133 Cal. 349; the case of *Watts* v. *the State,* 36 Georgia 231; *The United States* v. *Sacramento,* 2 Montana 239, and *in're Garvey,* 7 Colorado 502. Such of these cases as are accessible to this court have been examined and most of them found to be inapplicable to the questions herein submitted and discussed. The case of *Beg-*

*erow ex part,* 133 California 349, cited by counsel for the prisoner as a case in point, at first glance appears to be somewhat similar; but when it is carefully examined it is found that the California statute, although identical with our own, is based on a constitutional provision providing for a speedy trial, and the court construes the statute to be declaratory of what is a reasonable time within which a trial should be had. Besides, the Begerow case was decided by a divided court, and the dissenting opinion, rendered by Justice Garoutte, appears to me much the more logical. The facts of that case also are much more favorable to the prisoner than in the case at bar. The delay was shown not only to have been unnecessary but no fact is shown tending to excuse it. In Porto Rico there is no such constitutional provision as that existing in California, and for that reason a wider latitude is allowed to the courts in the construction of this statute, and a less showing is sufficient to constitute a good reason for postponing a trial. The right to a speedy trial is secured in Porto Rico by statute, and it may well be questioned whether the same is mandatory or merely directory. Even should no reason be shown upon the record for a brief delay by the court in bringing the defendant to trial, in the absence of proof to the contrary it would be presumed that the trial court had good reason for such a delay as occurred in the trial of this case. All presumptions are in favor of the propriety of the action taken by a court of competent jurisdiction. It appears in this case from the record itself that there were two other murder cases on the trial docket which were tried during the time this case was awaiting its turn. What length of time was necessary to dispose of them does not appear. Certainly by a perusal of the record presented to this court on the appeal of this case, one will find that the defendant has actually had a speedy and impartial trial and that the mere continuance of the case from day to day, necessitated by the business of the court, and to procure the at-

tendance of witnesses, was not such a delay as could be made a proper ground of complaint. The crime of which defendant was convicted was alleged to have been committed on the 26th day of August, 1902, the accusation against him was not presented until the 25th day of November, 1902; he was promptly arraigned on the same day, and, after several interlocutory orders made from time to time, finally tried on the 18th day of May, 1903, and sentenced on the 25th day of May, 1903, one day less than nine months after the crime had been committed and six months after the information had been presented. In a court in which several murder cases were pending, and in a capital case in which many witnesses had to be procured and examined, and in which, from the surrounding circumstances, it was very difficult to discover the evidence for the prosecution and present it to the trial court, certainly this is a reasonably short time; and there would be more reason for the defendant to complain of the haste than of the delay with which his case was determined. But this matter is presented here in *habeas corpus* proceedings, after the same question had been duly considered on appeal and decided adversely to the prisoner. But let us briefly examine the subject. The statute (Code of Criminal Procedure, section 448) reads as follows:

"Section 448.—The court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed in the following cases:

"1. Where a person has been held to answer for a public offense if an information is not filed against him within sixty days thereafter;

"2. If the defendant, whose trial has not been postponed upon his application, is not brought to trial within one hundred and twenty days after the filing of the information." (Code of Criminal Procedure, section 448).

This action is to be taken by the trial court presumably upon motion or application of the defendant. It is to deter-

mine whether a good case to the contrary is shown. If the court refuses or grants the motion an order must be made to that effect; and if it is not satisfactory the defendant can except to the ruling and present the question for review on appeal. In order to take advantage· of the right conferred in this statute on appeal it is necessary to reserve the point in a bill of exceptions covering all the circumstances of the case, and presenting the question fully and fairly before the Supreme Court for decision. This was not done, and the court correctly decided that there was no reversible error in the proceeding of the court below. And even if the Supreme Court erred in this matter, the question could not be presented on *habeas corpus,* the error not being fundamental, but merely one of procedure. The Constitution of the United States has no application to this proposition for reasons given elsewhere in this opinion. The whole matter was laid before this court in brief and argument on the appeal from the sentence pronounced against the prisoner and decided adversely to him for the reasons stated by Mr. Justice Hernández who pronounced the opinion of the court.

*Sixth.*—The sixth proposition announced by the petitioner's counsel in a summary of the other five, alleging that the judgment rendered by the Supreme Court is irregular and null for the reasons set forth, in that it affirmed the judgment of the District Court of Humacao to the prejudice of the substantial rights of the prisoner. This is plainly an effort to review the whole case in this proceeding, and to make the writ of *habeas corpus* serve the purpose of an appeal or writ of error, which as has been repeatedly announced by this court, cannot be done. A careful study of the statutes in connection with the decisions of the Supreme Court of the United States, and of California, from which our Code of Criminal Procedure is taken, would enable counsel to avoid such erroneous methods. The discussion of the several propositions *seriatim* fully covers the whole case made

in the brief of counsel, and it is unnecessary again to travel over the same ground. Although it might fairly be assumed that counsel for prisoner, not having included several of the grounds set out in his application for the writ of *habeas corpus,* in his written brief filed herein, had abandoned them as inapplicable to this proceeding, we will take them up and briefly review them especially as this is a capital case and everything that can be urged in favor of the unfortunate man condemned to death should be patiently heard and carefully considered. All of these points are subject to the objection made by the *fiscal* that they are not cognizable on *habeas corpus,* but only on appeal; and even if they were well-founded they should have been urged when this case was under consideration for the purpose of correcting errors of the trial court and not now when we can only inquire as to the legality of the imprisonment. Recurring, however, to the application, we will take up such of the more important points presented as, having been omitted in the brief, have not heretofore been noticed. In the second paragraph of the application it is urged that the *fiscal* (district attorney) had not delivered to the defendant a list of his witnesses when demanded of him, in compliance with section 142 of the Code of Criminal Procedure. This section of the Code reads as follows:

"The arraignment must be made by the prosecuting attorney, which consists in reading the information to the defendant and delivering to him a copy thereof, and of the indorsements thereon, including the list of witnesses, whereupon the court asks him whether he pleads guilty or not guilty to the information." (C. Cr. P. sec. 142 Rev. Stat. P. R. p. 652).

By a subsequent section of the same Code the defendant, if he requires it, is allowed at least one day after arraignment to answer the information by moving to set it aside, or demurring or pleading to it. He pleaded not guilty without in-

sisting on the list of witnesses and thus waived his right to the same. In the fourth paragraph of the application the complaint is made that the defendant was tried by the jury which had been drawn by the jury commissioners in April 1903, instead of by the jury previously selected for the year 1902. The functions of the old jury close as soon as the new one is drawn, and as the trial was not had until the 18th of May, the same was properly had before the jury drawn during the previous month. A merely cursory reading of sections 191 to 196 of the Code of Criminal Procedure leaves no room for doubt on this point. (Rev. Stat. P. R. pp. 663, 664 and 665).

In the sixth paragraph of his application the counsel for the prisoner complains that he was not permitted to introduce in evidence, for the purpose of discrediting the witness for the prosecution a copy of the record made in the case of Luis Delgado; it being supposed to contain statements contradictory to those made by the witnesses in this trial. This point was fully considered by this court on the appeal, and it is discussed at large in the opinion on the appeal, written by Mr. Justice Hernández. Referring to that opinion it is only necessary to say here that no proper predicate was laid for the introduction of impeaching evidence and it was properly excluded. (Section 245, Code of Criminal Procedure Rev. Stat. pp. 675-676).

It is unnecessary to notice the point in which counsel asserts that the defendant was denied a new trial. It is very unusual that such a reason should be presented for granting a writ of *habeas corpus*. None of these other points require further notice than has already been given them; except to say that the entire application evidently seeks to bring in review before this court, in this proceeding, the whole case presented in the court below and heretofore considered by this court; thus making the *habeas corpus* serve the purpose of a sort of writ of error or a second appeal. In many previous

cases we have endeavored to direct the attention of the bar to the nature and object of the great writ of *habeas corpus* so much prized by all lovers of individual liberty throughout the world. For at least six hundred and eighty-nine years (since the granting of Magna Charta on June 12, 1215), it has been the subject of discussion and decision in parliaments, legislatures and courts in England and America. More than two hundred and twenty-five years ago (on May 26, 1679) the famous *Habeas Corpus* Act of 31 Charles II., was passed, to secure from an arbitrary monarch and his servile judges the full benefits of the writ. During all these years and centuries cases have constantly arisen in which the nature, scope and purposes of the writ have been canvassed and decided and they should by this time be reasonably well understood. But inasmuch as this remedy for illegal imprisonment was unknown in this island until the advent of American institutions, it is scarcely to be expected that these principles of jurisprudence will become entirely familiar to the bar and the people, until our own courts have repeatedly announced them from the bench. In the freest countries on earth there is no such thing as absolute liberty. It is found only in a state of utter barbarism and even then it is bounded by the will of the chief who is able to exercise the greatest force. In organized society every man's liberty is limited by the rights of his fellow citizens.

Judge Cooley in his great work on Constitutional Limitations, thus treats of liberty:

"Sir William Blackstone says, personal liberty consists in the power of locomotion, of changing situation, or moving one's person to whatsoever place one's own inclination may direct, without imprisonment or restraint, unless by due course of law. It appears therefore, that this power of locomotion is not entirely unrestricted, but that by due course of law certain qualifications and limitations may be imposed upon it without infringing upon constitutional liberty. Indeed, in organized society, liberty is the creature of law, and every man will possess it in proportion as the laws, while imposing no un-

necessary restraints, surround him and every other citizen with pro-
tection against lawless acts of others." (Cooley's Const. Limit. p.
412 and cases cited).

The sole object of the writ of *habeas corpus* is to free the
applicant from illegal restraint, and it is a remedy designed
to reach every illegal imprisonment, and to open the prison
doors to every innocent man confined therein. (*Wales* v.
*Whitney*, 114 U. S. 564; *Coupland ex parte*, 26 Texas, 386;
*Commonwealth* v. *Lecky*, 1 Watts 66, 26 Am. Dec. 37 and note).

It cannot, however, be used as a substitute for an appeal,
or to re-try issues of fact, or to review the proceedings of a
court taken on a legal trial. It does not perform the office of
a writ of error or a *certiorari*. It is confined to its own sphere
(*Lehmkuhl ex parte*, 72 California 53; *Williamson ex parte*
26 Penn. St. 9; 67 Am. Dec. 374 and note; *McCutcheon ex parte*
10 Mont. 115; *Yarbrough ex parte*, 110 U. S. 651).

Errors and irregularities in procedure not involving the
question of the jurisdiction of the court rendering the judg-
ment under which the prisoner is held cannot be reviewed or
corrected on *habeas corpus*. (*Grace ex parte*, 12 Iowa 208; 79
Am. Dec. 536 and note; *Orteiza ex parte*, 136 U. S. 330;
*Stevens* v. *Fuller*, 136 U. S. 468; *Mirando ex parte*, 73 Califor-
nia 365; *Crouch ex parte*, 112 U. S. 178; *Watkins ex parte*, 3
Peters 193; *Harding ex parte*, 120 U. S. 782).

In defining the purpose to be accomplished by the great
writ of *habeas corpus* Judge Cooley wisely remarks:

"We have elsewhere referred to certain rules regarding the valid-
ity of judicial proceedings. In the great anxiety on the part of our
legislatures to make the most ample, provision for speedy relief
from unlawful confinement, authority to issue the writ of *habeas cor-
pus* has been conferred upon inferior judicial officers, who make use
of it sometimes as if it were a writ of error, under which they might
correct the errors and irregularities of other judges and courts, what-
ever their relative jurisdiction and dignity. Any such employment of
the writ is an abuse. Where a party who is in confinement under ju-
dicial process is brought up on *habeas corpus*, the court or judge be-

fore whom he is returned will inquire: (1) Whether the court or officer issuing the process under which he is detained had jurisdiction of the case, and has acted within that jurisdiction in issuing such process. If so, mere irregularities or errors of judgment in the exercise of that jurisdiction must be disregarded on this writ, and must be corrected either by the court issuing the process, or on regular appellate proceedings. (2) If the process is not void for want of jurisdiction, the further inquiry will be made, whether, by law, the case is bailable, and if so, bail will be taken if the party offers it; otherwise he will be remanded to the proper custody." (Cooley Const. Limit., pp. 423, 424 & 425 and cases cited).

This is a concise exposition of what had often been announced by the courts in all parts of our great republic and is amply sustained by a reference to the judicial decisions themselves. In accordance with these principles the Supreme Court of the United States says:

"Now, it has always been held that a mere error in point of law, committed by a court in a case properly subject to its cognizance, can only be reviewed by the ordinary methods of appeal or writ of error; but that where the proceedings are not only erroneous, but entirely void, as where the court is without jurisdiction of the person or of the cause, and a party is subjected to illegal imprisonment in consequence,—the Superior Court, or judge invested with the prerogative power of issuing a *habeas corpus,* may review the proceedings by that writ, and discharge from illegal imprisonment. This is one of the modes in which this court exercises supervisory power over inferior courts and tribunals; but it is a special mode, and confined to a limited class of cases." (*Parks ex parte,* 93 U. S. 21).

In a very celebrated case the highest judicial tribunal announces very clearly the office and limitations of the great writ of *habeas corpus* as follows:

"There are other limitations of the jurisdiction, however, arising from the nature and objects of the writ itself, as defined by the common law, from which its name and incidents were derived. It cannot be used as a mere writ of error. Mere error in the judgment or proceedings, under and by virtue of which a party is imprisoned, constitutes no ground for the issue of the writ. Hence, upon a re-

turn to a *habeas corpus,* that the prisoner is detained under a conviction and sentence by a court having jurisdiction of the cause, the general rule is, that he will be instantly remanded. No inquiry will be instituted into the regularity of the proceedings, unless, perhaps, where the court has cognizance by writ of error or appeal to review the judgment. In such a case, if the error be apparent and the imprisonment unjust, the appellate court may, perhaps, in its discretion, give immediate relief on *habeas corpus,* and thus save the party the delay and expense of a writ of error. (Bac. Abr. Hab. Corp., B. 13; Bethel's Case, Salk 348; 5 Mod. 19.) But the general rule is, that a conviction and sentence by a court of competent jurisdiction is lawful cause of imprisonment, and no relief can be given by *habeas corpus.*

"The only ground on which this court, or any court, without some special statute authorizing it, will give relief on *habeas corpus* to a prisoner under conviction and sentence of another court is the want of jurisdiction in such court over the person or the cause, or some other matter rendering its proceedings void.

"This distinction between an erroneous judgment and one that is illegal or void, is well illustrated by the two cases of *Ex parte Lange,* 18 Wall, 163, and *Ex parte Parks,* 93 U. S. 18. In the former case we held that the judgment was void, and released the petitioner accordingly; in the latter we held that the judgment, whether erroneous or not, was not-void, because the court had jurisdiction of the cause; and we refused to interfere.

"Chief Justice Abbot, in *Rex* v. *Sudds,* 1 East. 306, said: 'It is a general rule, that, where a person has been committed under the judgment of another court of competent criminal jurisdiction, this court (the King's Bench) cannot review the sentence upon return to a *habeas corpus.* In such cases, this court is not a court of appeal.'

"It is stated, however, in Bacon's Abridgment, probably in the words of Chief Baron Gilbert, that, 'if the committment be against law, as being made by one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the courts are to discharge.' Bac. Abr. Hab. Corp., B. 10. The latter part of this rule, when applied to imprisonment under conviction and sentence, is confined to cases of clear and manifest want of criminality in the matter charged, such as in effect to render the proceedings void. The authority usually cited under this head is *Bushel's Case,* decided in 1670. There twelve jurymen had been convicted in the oyer and terminer for rendering a verdict (against the charge of the court)

acquitting William Penn and others, who were charged with meeting in conventicle. Being imprisoned for refusing to pay their fines, they applied to the Court of Common Pleas for a *habeas corpus;* and though the court having no jurisdiction in criminal matters, hesitated to grant the writ, yet, having granted it, they discharged the prisoners, on the ground that their conviction was void, inasmuch as jurymen cannot be indicted for rendering any verdict they choose. The opinion of Chief Justice Vaughan in the case has rarely been excelled for judicial eloquence. T. Jones, 13; s. c. Vaughan, 135; s. c. 6 Howell's State Trials 999.

"Without attempting to decide how far this case may be regarded as law for the guidance of this court, we are clearly of the opinion that the question raised in the cases before us is proper for consideration on *habeas corpus.* The validity of the judgments is assailed on the ground that the acts of Congress, under which the indictments are found, are unconstitutional. If this position is well taken, it affects the foundation of the whole proceedings. An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but it is illegal and void, and cannot be a legal cause of imprisonment. It is true, if no writ of error lies, the judgment may be final, in the sense that there may be no means of reversing it. But personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that, as we have seen, the question of the court's authority to try and imprison the party may be reviewed on *habeas corpus* by a superior court or judge having authority to award the writ. We are satisfied that the present is one of the cases in which this court is authorized to take such jurisdiction. We think so, because, if the laws are unconstitutional and void, the Circuit Court acquired no jurisdiction of the causes. Its authority to indict and try the petitioners arose solely upon these laws." (*Ex parte Siebold,* 100 U. S. 375, 376, 377.)

Approving the Siebold case, the Supreme Court of the United States, giving the reason for the rule, uses the following language:

"The office of a writ of *habeas corpus* and the cases in which it will generally be awarded was clearly stated by Mr. Justice Bradley

speaking for the Court in *Ex parte Siebold,* 100 U. S. 371, 375 as follows:

(After quoting the extract which we have just made from 100 U. S. 376, showing the distinction between erroneous and void judgments, and continuing:)

"The reason of this rule lies in the fact that a *habeas corpus* proceeding is a collateral attack of a civil nature to impeach the validity of a judgment or sentence of another court in a criminal proceeding, and it should, therefore, be limited to cases in which the judgment or sentence attacked is clearly void by reason of its having been rendered without jurisdiction, or by reason of the court's having exceeded its jurisdiction." (*In re Frederich, petitioner,* 149 U. S. 76.)

And finally some of the most pertinent of the authorities are collected by the Supreme Court in the following paragraphs:

"The writ of *habeas corpus* is not a proceeding for the correction of errors. *Er parle Lange,* 18 Wall. 163; *Ex parte Siebold,* 100 U. S. 371; *Ex parte Curtis,* 106 U. S. 371; *Ex parte Carll,* 106 U. S. 521; *Ex jarte Begelow,* 113 U. S. 328; *Ex parte Yarbrough,* 110 U. S. 651; *Ex parte Wilson,* 114 U. S. 417; *Ex parte Royall,* 117 U. S. 241; *In re Snow,* 120 U. S. 274; *In re Coy* 127 U. S. 731; *In re Wight, petititioner,* 134 U. S. 136; *Stevens* v. *Fuller,* 136 U. S. 468." (*In re Frederich, petitioner,* 149, U. S. 75).

Keeping these principles in view counsel in preparing their application for *habeas corpus* should eliminate therefrom all extraneous matter and confine themselves to matter which can properly receive the attention of the court. The statute of *habeas corpus* found in our Code of Criminal Procedure (sections 469 to 500 inclusive) gives the general principles applicable to this proceeding and if followed, especially in the light of the commentaries made thereon under similar sections of the Penal Code of California, (section 1473 to 1505 inclusive) will guide the practitioner in the

correct path. The judgment rendered by the District Court of Humacao, condemning the prisoner to death, which was affirmed by this court on appeal, was one which was clearly within the power of the trial court to make, that court having jurisdiction of the person of the defendant and of the subject-matter, as was also the affirmance of the same by this court on appeal; and whatever errors, if any, may have been committed by either court, they were not fundamental; and inasmuch as, in the language of Chief Justice Fuller, ''The writ cannot be availed of as a writ of error or appeal,'' the relief sought cannot be granted. It is unnecessary to elaborate this opinion, inasmuch as the several amendments to the Constitution referred to by the prisoner's counsel do not apply to the present case, and since no action taken either by the Supreme Court or the court below has been shown which would nullify the judgment rendered by them or either of them; and if there had been any errors committed at all they would be only such as could be considered on appeal, and not on *habeas corpus;* for the reasons stated, therefore the enlargement of the prisoner must be refused.